## WALKER *v.* STATE.

### [86 South. 337.   No. 21445.]

1. HOMICIDE. *Conviction of manslaughter in prosecution for murder is an acquital of murder.*

   The verdict of a jury finding a party, put upon trial for murder, guilty of manslaughter, is an acquittal of the charge of murder.

2. HOMICIDE. *Where evidence shows either murder or homicide by accident, an instruction authorizing verdict of manslaughter is improper.*

   Where a party is indicted for murder, and the state's testimony in the case, if believed, convicted the defendant of murder, and the defendant's testimony, if believed, showed that the homicide was an accident, an instruction authorizing a verdict of manslaughter was improper. The defendant was either guilty of murder or nothing.

APPEAL from circuit court of Tallahatchie county.

HON. W. E. STONE, Special Judge.

Woodson Walker was, convicted of manslaughter, and sentenced to a term in the penitentiary, and he appeals. Reversed, and appellant discharged.

*Jas. A. Blount* and *James McClure, Jr.,* for appellant.

In the instant case all the appellant could have been convicted of was manslaughter if the evidence in the case would have supported a verdict of manslaughter, since he had once been tried for and acquitted of the crime of murder and upon this trial found guilty of manslaughter. This is a constitutional guaranty, which has long been settled by this court. *Power* v. *State,* 36 So. 6.

The sole question at issue in this case is, can the appellant be convicted of manslaughter upon the evidence introduced and upon the case made out against him by the state. We are of the opinion he cannot and that the trial court should have sustained the appellant's motion for a peremptory instruction.

We contend that this case offers no halfway ground. The appellant is either guilty of murder or nothing. From the evidence introduced, if the state's evidence is believed, the appellant is guilty of murder or the killing was an accident, and, if the appellant's testimony is believed, the killing was unquestionably an accident.

We invite the court's careful attention to evidence introduced by the state. It is clear from this evidence that the state failed absolutely to make out a case of manslaughter against the appellant. In the case of *Stovall* v. *State,* 47 So. 479, it is reported, that the accused and the decedent, who had been on friendly terms met in the road, and accused asked for and received his pistol, which he had previously lent the decedent, and accompanied her home at her suggestion to get his scabbard. While they were in the house, talking pleasantly, the pistol in the accused's hands was discharged without warning and the decedent killed. No motive for the killing was shown. The appellant claimed that the pistol was discharged accidentally. No bad feeling was proven to have existed between the appellant and the decedent. The court speaking through WHITFIELD, C. J., said: "On the facts in this case this killing was most manifestly murder or nothing. If the killing was accidental the defendant was guilty of no offense. If it was not accidental, he was guilty of murder beyond all controversy. The giving of a manslaughter instruction is such a case was manifestly error and for this error the judgment is reversed and the case remained. *Virgil's case,* 63 Miss. 320."

The case under review is almost identical with the Stovall case just cited. We submit that the principle of law announced by this court in that case is authority for this court to reverse the ruling of the trial court. The court held in *Rester* v. *State,* 70 So. 881, in which case the evidence established by the state, if believed, constituted the defendant guilty of murder; and the testimony of the defendant, if believed, established a case of self-defense, that under such circumstances, it is error to grant on the

part of the state an instruction for manslaughter. The
court through Justice STEVENS said : "That, as said before
by our court in similar cases, there is no middle ground.
This is not a case where the jury, by believing portions of
the state's evidence and certain portions of the defendant's
evidence, can thereby weave out or make out a case of man-
slaughter. The defendant has the absolute right to have the
facts of the case presented to the jury on instructions which
state the law fully and accurately.

Likewise in the case at bar, where the defendant was
tried on an indictment for murder with instructions that
he could only be convicted of manslaughter and where the
evidence introduced by the state fails to support the
charge, it is error to allow the case to go to the jury. The
failure of the lower court to grant the appellant's motion
to exclude the state's testimony as set out above is con-
demned by this court in the case of *Parker* v. *State,* 102
Miss. 113. The court speaking through Justice COOK said:
"The instruction authorizing the jury to convict the .de-
fendant was vicious in the extreme when applied to a case
like the one under review. There is no debatable question,
no half way ground here, except the defendant's guilt or
innocence of the crime of murder. To advise the jury that
they could compose their differences and doubts, if any
they had, by finding the defendant guilty of a lesser crime
without evidence to support the verdict is unfair to the
defendant and manifest error."

In the instant case, the state fails unquestionably to
make out a case of manslaughter or to prove any of the
elements of this crime. If the state made out a case of
murder against the appellant, he could not be convicted of
that crime as he was tried and acquitted of that offence at
a former trial, and the trial here is limited to the charge
of manslaughter. His conviction on this charge could only
be secured by the state establishing the elements of man-
slaughter as defined by the Mississippi Code 1906, para-
graph 1236, to-wit: "The killing of a human being with-
out malice, in the heat of passion but in a cruel or unusual

manner without authority of law and not necessarily self-defense shall be manslaughter."

In the case of *Guest* v. *State,* 52 So. 211, the court through Justice McLAIN distinguishes between murder and manslaughter by saying: "The chief distinction between murder and manslaughter is deliberation and malice in murder and the want of deliberation and malice in manslaughter." And to which we add, the act is committed in the heat of passion because of the want of these elements in manslaughter. In the case of *H. S. Smith* v. *State,* 58 Miss. 857, in differentiating murder and manslaughter, the court said through Justice COOPER, "that to reduce an homicide from the grade of murder to manslaughter, the killing must not only be done in the heat of passion, but the provocation must be sufficient to negative the inference of malice.

When we considered the testimony in this case as applied to the above distinctions between murder and manslaughter, the record does not in any way show one word uttered or any act committed indicating that the appellant was acting under the heat of passion or otherwise indicating manslaughter.

The appellant's testimony cannot arbitrarily be set aside by the court. It seems clear to us from his testimony that the killing was an accident, and this belief is sound when we consider the state's testimony with the appellant's testimony.

Yet, if we are inclined to turn from this opinion, from the evidence, in the case, how else could have the appellant killed the deceased, unless he had gone there to commit murder, evincing a depraved heart and acting with malice and deliberately consummating the deed.

Surely there is no evidence establishing heat of passion or any of the elements of manslaughter. We reassert the sound doctrine of this court, that it was error to allow the case to be submitted to the jury on the evidence introduced on the charge of manslaughter.

We close this argument in the language of Justice STE-PHENS who said "that the defendant has the absolute right to have the facts in the case submitted to the jury on instructions that state the law fully and accurately." The following cases are authority for the court to reverse the ruling of the lower court. *Lester* v. *State,* 70 So. 881; *Parker* v. *State,* 102 Miss. 113; *Bailey* v. *State,* 46 So. 137; *Virgil* v. *State,* 63 Miss. 317; *Johnson* v. *State,* 78 Miss. 627; *Jones* v. *State,* 98 Miss. 899; *Stovall* v. *State,* 47 So. 479; 4 Ga. App. 476, and other cases there cited.

*H. Cassedy Holden,* Attorney-General, for the state.

The sole question in this case, as correctly stated by counsel for the appellants, is whether or not the defendant was properly convicted of manslaughter upon the evidence furnished by the state. The appellant urges that the evidence of the state, if believed, makes out a case of murder; that the evidence of the defendant, if believed, makes out a case of pure accidental shooting. The plea of self-defense is not involved in the case.

If it be true that the evidence presented by the state makes out a case of murder or nothing, then it is conceded that the instruction on manslaughter was erroneous and the case should be reversed. But it is submitted that the evidence of the state contained the elements of manslaughter and the instruction based upon the presence of these elements, was proper.

The law in this state on the proposition of granting a manslaughter instruction in a murder case is this: "Where the evidence contains the elements of manslaughter the instruction should be granted, but not otherwise." *Evans* v. *State,* 44 Miss. 762; *Rolls* v. *State,* 52 Miss. 391; *Murphy* v. *State,* 89 Miss. 827, 42 So. 877; *Hawthorne* v. *State,* 58 Miss. 778; *Johnson* v. *State,* 75 Miss. 635, 5 So. 95; *Echols* v. *State,* 100 Miss. 577, 70 So. 794; *Green* v. *State,* 37 So. 646; *Huston* v. *State,* 105 Miss. 413, 62 So. 421; *Watson* v. *State,* 112 Miss. 16, 72 So. 836; *Martin* v. *State,* 112, Miss.

365, 73 So. 64; *Richardson* v. *State,* 84 So. (*Advance Sheets*) ; *Rester* v. *State,* 100 Miss. 689, 70 So. 881.

The case at bar comes within the rule laid down in the Rester case just quoted. It was the province of the jury to pass upon the facts of the case and to settle any issue of fact in the light of and in accordance with the law of the case. Now, the evidence for the state showed that the defendant was not guilty of murder; that if he was guilty of anything he was guilty of manslaughter, or he was guilty of nothing. Therefore, the court properly instructed the jury that they could find the defendant guilty of manslaughter only, or they could acquit him. Surely this was a proper instruction on the law of the case, and it was up to the jury to decide the question of fact, in the light of the instruction as to whether or not the defendant was guilty of manslaughter. Having deduced, from the evidence that the defendant was so guilty and rendered their verdict accordingly, this court on appeal will not reverse.

The question of granting or refusing a manslaughter instruction in a murder case appears in a large number of decisions of this court. The leading decisions of this group have been quoted above. From an examination of these cases it appears that this court, when the question of refusing or granting a manslaughter instruction in a murder case is presented to him, simply decides each case upon its peculiar facts. The court has reversed because the lower court granted a manslaughter instruction in a murder case where the facts showed that there were no elements of manslaughter; and the court has reversed for refusal to grant a manslaughter instruction where the facts in the case contained the elements of manslaughter. Each case which comes before this court therefore must rest upon its own facts. Consequently, this case must be submitted to the court upon its peculiar facts, for a decision in the light of the other decisions of this court upon this question, which other decisions are above cited.

Manslaughter is the killing of a human being without malice, without authority of law, in the heat of passion and

upon provocation. It appears from the evidence of the state in this case that the killing of Dobbs Spate was without malice aforethought. But the killing was without authority of law and it was in the heat of passion, and it was upon provocation, but the sufficiency of the provocation is doubtful. It will be necessary for the court to read the evidence of the state in the record in order to ascertain whether or not the elements of manslaughter were presented.

I have been frank and candid with this honorable court in this brief, my object always being to assist and illuminate, not to hinder, or becloud the issues of law in any criminal case on appeal. I neither urge an affirmance nor suggest a reversal, but I only refer the court to the fact of this case contained in the evidence for the state and to its own decisions upon the question of granting or refusing a manslaughter instruction in a murder case. The purpose of this high court in every case is justice; the writer of this brief fosters the same cause.

SYKES, J., delivered the opinion of the court.

Woodson Walker was indicted for murder and convicted of manslaughter in the circuit court of Tallahatchie county, and sentenced to serve a term in the penitentiary, from which judgment this appeal is prosecuted.

The testimony relating to the killing is conflicting. The state's witnesses testified: That appellant about noon came to the house in which lived the deceased, Dobbs Spates, and three others. That he was on friendly terms with all of these people. That the appellant stated he had had a difficulty with another negro that morning, and wanted to borrow a pistol from Mose Blanchard. That appellant went to the trunk of Mose Blanchard, and got the pistol, and put it in his shirt. That he was in conversation with Mose Blanchard and his wife, telling them what he would do to the negro with whom he had had the quarrel when he saw him, when one of the witnesses said to him that he would do nothing but run, as he did that morning. During

this conversation they were all laughing and talking. About that time the deceased, Dobbs Spates, came into the room. When he did so, the appellant stated, "I will show you how to kill a (using a vile epithet) of this kind." That when he said that he aimed the pistol at and shot the deceased. That the deceased had said nothing whatever to the appellant. That the deceased and appellant were on friendly terms. After the shooting the appellant immediately left the house.

The testimony for the appellant was: That all of these people were his friends, and the pistol was lent to him at his request by the wife of Mose Blanchard. That, when he was ready to leave, Mose, and the deceased tried to take the pistol away from him, and that in the scuffle the pistol was accidentally discharged, killing the deceased.

There is not one scintilla of testimony in the record that there was any fuss or difficulty at the house previous to the killing. On the contrary, the testimony shows that these people were laughing and talking, and were all on friendly terms. No provocation whatever was proven, upon which a jury could find that the killing was done in the heat of passion. Under the testimony of the state, the appellant was guilty of murder. Under that of the appellant, it was an accidental killing, and he was guilty of nothing. The defendant was twice tried. On the first trial a manslaughter instruction was given, and he was convicted of manslaughter. This verdict was set aside, and a new trial granted. The verdict of the jury, which found the appellant guilty of manslaughter, operated as an acquittal of the charge of murder. *Hurt* v. *State* 25 Miss 378, 59 Am. Dec. 225.

Since there were no elements of manslaughter shown by the testimony, it was error to have given a manslaughter instruction. *Virgil* v. *State,* 63 Miss. 317; *Rester* v. *State,* 110 Miss. 689, 70 So. 881; *Richardson* v. *State,* 85 So. 186.

The judgment of the lower court is reversed, and the appellant is discharged.

              *Reversed, and appellant discharged.*