## WOODWARD *v.* STATE.

[94 South. 717, No. 22929.]

1. HOMICIDE. *As to whether one guilty of murder or manslaughter, jury have wide discretion where quality of act in issue; verdict for manslaughter upon indictment for murder held authorized by the evidence.*

Where a person is charged with murder and convicted of manslaughter, and where the quality of the act is in issue, the jury have a wide discretion in their finding of fact; and where the evidence showed that the defendant and the deceased had engaged in a quarrel, and that the defendant was in a high state of exasperation caused by the acts and conduct of the deceased, and that the deceased was reaching for an axe, though several feet from the defendant, when the defendant fired the fatal shot, the jury were, under the facts set forth in the opinion, authorized to return a verdict of manslaughter.

2. CRIMINAL LAW. *Misconduct of trial judge and juror not promptly excepted and objected to waived.*

In a case where on motion for a new trial it is urged that a new trial should be granted because of a conversation between the trial judge and a member of the jury with reference to a verdict and the punishment to be imposed in case of such verdict, knowledge of which came to the attorney for the defendant before verdict, but no objections were made thereto until after verdict, and then no bill of exceptions was filed, but such facts were only contained in an *ex parte* affidavit, this will not cause a reversal of the case. The defendant should have objected and excepted promptly on learning the facts before verdict, and, if no objections were then made, the error will be considered waived.

APPEAL from circuit court of Copiah county.

HON. D. M. MILLER, Judge.

Lizzie Woodward was convicted of manslaughter, and she appeals. Affirmed.

*M. S. McNeil,* for appellant.

When we admit in this case that the manslaughter instruction was proper and should have been given by the court we are then forced to the absolute conclusion that

instruction number one was fatally defective and calculated to mislead and confuse the jury in the trial of the case. Instruction number one is as follows: "The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant, Lizzie Woodward, shot Freeman Woodward, the deceased, when the defendant was in no danger, real or apparent of great bodily harm at the hands of the deceased, then she is guilty as charged in the indictment. And this is true regardless of every other fact in the case."

It cannot be contended that this instruction given the state was cured by any instruction given the defendant, because the jury were told that if they believed these facts, then the defendant was guilty, and that this was true regardless of every other fact in the case. Regardless of what fact? Regardless of the law as announced by any other instruction asked by the defendant? Regardless of any evidence which might have a tendency to reduce the grade of the crime from murder to manslaughter instruction, then this case should be reversed because of the error committed by the court in giving instruction number one for the state. *I. C. R. R. Co.* v. *McGowan,* 92 Miss. 602; *Solomon* v. *City Compress Co.,* 69 Miss. 314; *Kansas City M. & B. R. R. Co.* v. *Lilly,* 8 So. 644; *Herndon* v. *Henderson,* 41 Miss. 584.

With reference to the giving of conflicting instructions and whether or not it should furnish grounds for a reversal in most jurisdictions depends upon whether they are calculated to mislead the jury as to a matter material to the issue, or leave them in doubt as to the law. In some jurisdictions the giving of conflicting instructions is generally presumed to prejudice the party complaining.

Looking through the record in this case can it be said that the instructions asked and given to the state were not confusing? Can it be said that they were not calculated to mislead the jury, when they are told in one instruction that they might find the defendant guilty of manslaughter and in another, that if they believe certain facts testified

to by the state's witnesses they should find her guilty as charged in the indictment, . . . regardless of every other fact in the case. The two positions assumed in the instructions, after a careful review of the record, are not only contradictory and conflicting but absurd. And looking at the result of the case and the form of the verdict of the jury it necessarily follows that for some reason the jury were involved in confusion, otherwise they would not have rendered the verdict they did in this case, of "we, the jury, find the defendant guilty of manslaughter, and recommend the lowest penalty possible."

So we insist that it makes no difference what position we take in this case it should be reversed. We further insist that this case was tried out in the lower court upon the sole issue of whether or not the defendant was guilty of murder or whether she killed the deceased in self-defense, and the giving of the manslaughter instruction in the case constituted reversible error, and this case should be reversed and defendant discharged.

*H. Talbot Odom,* assistant attorney-general, for the state.

The principal errors upon which a reversal is brought are as follows: 1. That the court erred in granting a manslaughter instruction. 2. That the court erred in going into the jury room at the request of one of the jurors and conversing with members of the jury with reference to the case, and especially with reference to following recommendations for mercy in the event that the jury found a verdict of guilty of manslaughter.

The theory of the state was that the appellant was either guilty of murder or manslaughter, while the defendant claimed that she shot in self-defense.

Counsel for the appellant contend that the manslaughter instruction should not have been given under the evidence; that the evidence for the appellant showed that if she was guilty of anything she was guilty of murder. Our court

in a long list of authorities, among which the case of *Parker*
v. *State,* 102 Miss., at page 113, which seems to be the lead-
ing case, held that a manslaughter instruction should not
be given where the evidence shows that the offense was
murder. These authorities were expressly overruled in the
case of *Houston* v. *State,* 106 Miss. 417, citing *Moore* v.
*State,* 86 Miss. 160. Then our court in the case of *Rester*
v. *State,* 110 Miss. 689, overruled the *Houston case, supra,*
and stated as the correct rule of law that announced in the
case of *Parker* v. *State, supra.* Since the *Rester case,
supra,* was decided, our court has followed the rule an-
nounced by them in *Martin* v. *State,* 112 Miss. 365, and
also in *Walker* v. *State,* 86 So. 337. It seems then, to be
clearly established as the rule in Mississippi, that where
the evidence in a case clearly establishes murder, and not
manslaughter, that it is error for the court to grant a man-
slaughter instruction. As I understand the law, this
court will not consider the evidence for the state or the
evidence for the defendant separately in determining
whether or not the state has made out a case of manslaugh-
ter, but that all the evidence introduced will be considered
as a whole. *Springler* v. *State,* 92 So. 633.

The jury trying this case, decided that there were no
merits in the self-defense theory interposed by appellant,
otherwise the verdict would have been a verdict of not
guilty. So it goes without argument that the appellant was
either justified in the shooting of the deceased, or else he
was either guilty of murder or manslaughter. As above
stated, the jury trying the case decided positively that she
was not justified. The inescapable conclusion is that she
must have been guilty of either murder or manslaughter.
If the verdict of manslaughter in this case will not stand
the test, then on the authority of the *Walker case, supra,*
the appellant must be acquitted and goes unwhipped of
justice, when it cannot be denied that she is either guilty
of murder or manslaughter. So under this situation, I
respectfully submit to the court that in passing on the
question of whether or not the evidence in this case jus-

tified an instruction on manslaughter, the court should be most lenient in favor of the state. I feel that justice demands such a consideration at the hands of this court.

I respectfully submit further that the statement made by counsel for appellant in his brief on page 6 as follows warrants an instruction on manslaughter: "The testimony in this case shows that at the time appellant entered the yard with the pistol in her hand she was excited and crying; that she told her husband not to take her hog, and after some conversation, she and her witnesses claim," etc.

(2) It is next alleged that while the jury was deliberating upon this case the circuit judge entered the jury room at the request of one of the jurors, who asked him to tell the jury the least penalty that could be imposed for manslaughter. That the trial judge stated to the juror that under the law he had no right to tell him what the maximum or minimum punishment was, but that a person convicted of manslaughter could be fined; and when asked what penalty he would impose in the event the jury returned a verdict of manslaughter and asked the mercy of the court, he replied that he would not tell him, but that they could rest assured he would not disregard their recommendation. This alleged conduct on the part of the trial judge is assigned as error.

This matter is brought before this court by means of an affidavit filed by the attorney representing the appellant, with a motion for a new trial in the court below. There was no special bill of exceptions to the action of the court, and all that the record contains with reference to this matter is in the said affidavit above mentioned. This motion and affidavit appear to have been on file for six months before the trial judge passed on the motion, at which time same was overruled, which appears on pages 16 and 17 of the record.

If this court should hold that the affidavit in question sufficiently presents the matter to this court for determination, then I submit that under former holdings of this

court, as announced in the case of *Ellerby* v. *State*, 79 Miss. 10, also *Windham* v. *State*, 91 Miss. 845, and in the recent case of *Abney* v. *State*, 123 Miss. 546, that the court committed reversible error under the express holding of this court in the cases above cited. And it is the contention of the state that the objection was not properly submitted by the affidavit. There was no objection by counsel to the action of the court, although counsel's affidavit states that he was present and in court at the time, It is further our contention that after objection had been duly made, that counsel for the appellant should have taken a special bill of exceptions, in which the facts complained of should have been set out. In the case of *Gilbert* v. *State*, 78 Miss. 300, this court held it to be fatal error for the trial court of its own motion to give the jury an oral instruction, although the same be in response to a question propounded by one of the jurors. But it will be noted that the defendants in the *Gilbert case, supra,* duly objected and excepted to said action of the trial court. It is highly probably that the court would not have considered this error, had it not been for the fact that objection was duly taken. This line of argument finds basis for its origin in section 3212 of Hemingway's Code. I respectfully submit that the cases cited thereunder are ample authority to support my contention.

I submit that the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for the murder of her husband, Freeman Woodward, and on trial was convicted of manslaughter and sentenced to two years in the state penitentiary, from which judgment this appeal is prosecuted.

Appellant and the deceased had been married about two years, and had separated several times, the last time being about two weeks prior to the fatal difficulty. The deceased had been married several times, and had abandoned

his wife each time for some other woman whom he after-
wards married.   At the time of the separation he seems to
have taken up with another woman, and sued out a writ
.of replevin for his personal household effects, which were
surrendered to the officer serving the writ, the appellant
surrendering a finger ring, among other things.   At the
time the writ was served and the property taken the ap-
pellant stated to the officer that she wanted him to keep
her husband away from her, that she was afraid of him,
and that if he came back up there they might need a coroner.
A few nights after this writ of replevin was served the
deceased came to the house of appellant and tried to gain
admittance to the house, but she declined to open the door.
He then stated to the appellant he was coming the next
day and get a hog which was penned on the premises, and
which appellant claimed was her property.   The appellant
told the deceased he could not get the hog, that it was her
property, and deceased stated he would come and get the
hog and come prepared, and went away, returning the next
morning with a horse and wagon which he drove past the
house and to the rear of the premises where the hogpen was
situated, and stopped near said pen and was talking to
some other negroes.   The appellant, seeing him pass and
drive his wagon around near the hogpen, took the pistol
in hand and went out where the deceased was.   As to what
happened after she reached the place where the deceased
was the evidence is conflicting.   The state witnesses tes-
tified that she came out and accosted the deceased about
the hog, telling him he could not take it; that finally the
deceased said he had not said he would, and asked her
what she was doing with the pistol; that she told him she
would burn him up with the pistol if he took the hog.   One
of the state witnesses testified that she was mad and cry-
ing, and directly opened fire upon the deceased, firing two
shots, one of which took effect, and from which deceased
died about four days afterwards.   The defendant and her
witnesses testified that she went out armed with a pistol,
and that a conversation ensued in which she told deceased

that he could not have the hog, and that defendant said he would take it, and these statements were reiterated several times, and deceased asked her what she was doing with the pistol, and she told him she would burn him up with it if he took the hog; that deceased said he would take the hog and started for an axe which lay near him, and as he reached for the axe she opened fire and fired two shots, one of which felled the deceased; that he fell within about three feet of the axe. All of the testimony tended to show that the defendant and the deceased were several feet apart at the time. The state's evidence showed that he was some ten or twelve feet, and defendant showed that he was about nine feet. The state's evidence also showed that he was several feet from the axe, and that he made no movement towards the axe, while the defendant's testimony showed he was about three feet from the axe and was reaching for it.

The state obtained two instructions which are alleged to be erroneous and are as follows:

"The court instructs the jury for the state that, if you believe from the evidence beyond every reasonable doubt that the defendant, Lizzie Woodward, shot Freeman Woodward, the deceased, when the defendant was in no danger, real or apparent, of great bodily harm at the hands of deceased, then she is guilty as charged in the indictment, and this is true regardless of every other fact in this case."

"The court instructs the jury for the state that there are five verdicts that you may find in this case as follows:

" 'We, the jury, find the defendant guilty as charged in the indictment.'

"In this event it would be the duty of the court to sentence the defendant to hang. Or,

" 'We, the jury, find the defendant guilty as charged in the indictment and fix her punishment at imprisonment in the penitentiary for life.'

"In that event it would be the duty of the court to sentence her to the penitentiary for life. Or,

" 'We, the jury, find the defendant guilty as charged in the indictment and disagree as to her punishment.'

"In that event it would be the duty of the court to sentence her to the penitentiary for life. Or,

" 'We, the jury, find the defendant guilty of manslaughter.'

" 'We, the jury, find the defendant not guilty.' "

It is objected to the first instruction that it does not deal with the heat of passion, and that the concluding clause, "and this is true regardless of every other fact in this case," necessarily excludes manslaughter from the finding of the jury, while the second instruction tells the jury that they may find the defendant guilty of manslaughter as one of the verdicts which might be rendered in the case; that the two instructions are inconsistent. It is also insisted that there is no manslaughter because the testimony for the state shows the killing to be murder while the evidence for the defendant establishes a justifiable homicide; that the doctrine of the *Rester Case,* 110 Miss. 689, 70 So. 881, and of *Walker* v. *State,* 123 Miss. 517, 86 So. 337, became applicable; and that appellant should be discharged because acquitted of murder.

We have carefully considered this assignment of error with the evidence in the record, and we think it is not well taken because the jury were warranted in finding manslaughter in this case. Whenever the quality of the act of killing is involved, the line of demarcation between murder and manslaughter may be hard to distinguish. There is frequently a twilight zone between the two when it is hard to distinguish whether the killing is done with malice aforethought or whether it be done in the heat of passion caused by adequate provocation, and sometimes whether the facts and circumstances upon which the defendant acts are such as would cause a reasonably prudent man to so act under the same circumstances or not is hard to define and distinguish. In such case a great deal of latitude is allowed the jury in passing upon the facts. The circumstances in evidence in this record show that the con-

duct of the deceased under all of the circumstances was such as to be highly exasperating, and the evidence shows that the appellant was greatly wrought up at the time of the killing caused by the conduct of the deceased. It is also in evidence that the deceased at the time of the shooting was several feet removed from the appellant, and she may have believed that she was in danger of bodily harm because of the movement of the deceased towards the axe, viewed in the light of his threat of the previous night, and of all of the surrounding circumstances testified to by the witnesses. Where a person acts upon appearances and under the belief that he is in danger of great bodily harm at the hands of his adversary, and such facts are not sufficient for a reasonably prudent man to so believe, and the acts are not prompted by malice, but by a want of reasonable courage, we think under the statutes of our state the jury would be warranted in finding a verdict of manslaughter. Taking all of the evidence together we think the jury had ample evidence to draw an inference supporting manslaughter in its verdict.

It is also assigned for error that the court erred in overruling the motion for a new trial on the ground that the trial judge had a conversation with a member of the jury outside of the presence of the defendant, and that in such conversation the juror desired to know the least penalty for the conviction of manslaughter, and that the judge stated he could not tell the maximum and minimum punishment, but that manslaughter could be punished by a fine, and that the juror asked, if they convicted of manslaughter with recommendation of mercy, what punishment the court would inflict, and the judge told him he could not give this information, but he would not disregard the jury's recommendation in such case. This matter is set forth in an affidavit filed by the attorney for the appellant after the rendition of the verdict and is not contained in any bill of exceptions. In his affidavit he states that a bailiff came to the room where the attorney and the judge were in conversation and told the trial judge that a juror wished to

see him; that the judge went into the jury room and engaged in conversation with members of the jury; that the affiant was not close enough to hear the conversation between the judge and the jury, but, when the judge returned to where the affiant was seated, the judge stated to the affiant that one of the jurors had asked him to tell what the lowest penalty was that could be imposed for manslaughter; that the trial judge stated to the juror that under the law he had no right to tell the jury what the maximum or minimum penalty was, but that a person convicted of manslaughter could be fined; that the juror then asked the judge what penalty he would impose in the event the jury returned a verdict of manslaughter asking the mercy of the court; that the trial judge stated to the juror that he could not tell him, but that the juror could rest assured that he would not disregard the jury's recommendations; that soon after this conversation was reported to the affiant by the trial judge the jury returned a verdict to the court, and while the judge was on the bench the verdict was handed him by one of the jurors, and that the judge read the verdict as follows: "We, the jury, find the defendant guilty of manslaughter and recommend the mercy of the court." That thereupon immediately the court discharged the jury, and about one hour later, after a number of the jurors had gone, affiant discovered that the verdict by the jury read as follows: "We, the jury find the defendant guilty of manslaughter and recommend the lowest penalty possible," and that affiant had no opportunity to poll the jury.

In the case of *Powers* v. *State,* 83 Miss. 691, 36 So. 6, this court held that a bill of exceptions was the proper remedy to present any matter occurring at the trial that was not properly a part of the record. See the discussion at pages 699 and 700 of the Mississippi report of this case and the authorities there referred to. Whether the bill of exceptions is the exclusive remedy or not, it was the duty of the appellant to promptly make objections and take exceptions on learning what happened, and there

is no showing in the record that there was any objection made until after the verdict was rendered. A person on trial for crime should not be permitted to sit silent and secure whatever benefit might flow to him by not objecting, and, after the verdict, then for the first time raise objection. He will not be permitted to gamble with the jury's verdict in this way, but he must promptly elect what action he will take, and, if no objection be made after knowledge of the facts, the objection will be waived.

The judgment of conviction will therefore be affirmed.

*Affirmed.*