### ABELE *v.* STATE.*

(Division B. April 6, 1925.)

[103 So. 370. No. 24493.]

BURGLARY. *Criminal law. Conviction on unsupported testimony of accomplice not upheld in view of circumstances; evidence held insufficient to support conviction for burglary.*

Ordinarily a conviction may be had upon uncorroborated testimony of an accomplice, but where the accomplice is the sole witness connecting the defendant with the crime, and where his veracity is shown by strong evidence to be bad, and where defendant's reputation for honesty and integrity, truth and veracity, is satisfactorily proved to be good, and where an alibi is proved by a disinterested witness, a conviction on the unsupported testimony of the accomplice will not be upheld. The evidence in this case reviewed and *held* insufficient.

*Headnote 1. Burglary, 9 C. J., Section 132; Criminal Law, 16 C. J., Section 1423.

APPEAL from circuit court of Tunica county.

HON. W. A. ALCORN, JR. Judge.

F. R. Abele was convicted of burglary, and he appeals. Reversed and remanded.

*Galloway & Weinstein,* for appellant.

After a careful reading of the record in this case nowhere can be found any testimony whatsoever to connect appellant with the commission of the crime, except that of the witness, Westbrook, and we are frank to say that we are unable to find anywhere in this record any facts or circumstances to corroborate his testimony. The appellant was convicted upon the testimony of R. T. Westbrook who was indicted and convicted of the said burglary. R. T. Westbrook the principal witness upon whose testimony alone the state relied for a conviction, and

upon whose testimony alone a case was made out against appellant, was impeached in every manner known to the law. He was on his own testimony an accomplice, served a sentence in the state penitentiary of Mississippi for the commission of this same offense. He made statements out of court contrary to his statements in court. He acknowledged on the witness stand that he had been engaged in the bootlegging business and convicted. He admitted on the witness stand that he had been engaged in the thieving business for some time prior to the commission of the crime to which he pleaded guilty as an accomplice in the instant case, and it was proven by witnesses knowing his reputation for truth and veracity that he was unworthy of belief and that they would not believe him on oath, and that his reputation for honesty and integrity was of the worst kind.

The appellant proved by a number of witnesses who stand high in the business and social world that he bore a good reputation for truth and veracity, honesty and integrity and that he was worthy of belief, and whose reputation for honesty and integrity was above reproach. Appellant further proved by a number of unimpeached witnesses that he was in Memphis when the crime was committed and confessed to by Westbrook. This court has held that a conviction ought not to stand upon evidence disclosed by the record in this case. The only incriminating evidence is contained in the testimony of Westbrook who was impeached by every method known to the law while the defendant proved his defense by a large number of unimpeached witnesses and the evidence clearly preponderates in his favor. *Wright* v. *State,* 130 Miss. 608 to 610.

*J. L. Byrd,* Assistant Attorney-General, for the state.

The appellant argues only the insufficiency of the evidence to support the verdict. Counsel for appellant vigorously assail the testimony of the accomplice, Westbrook, and charge that he is utterly unworthy of belief,

and call attention to various admissions made by Westbrook as to his previous life. But the witness Westbrook was clear and straightforward in his testimony as to the robbery, and the apparent contradictions therein were satisfactorily accounted for. On the other hand, there were several remarkable things in the testimony of the defendant which were well calculated to cause the jury to hestitate to accept it as true. One thing stands out clearly in the record, and that is the attempt of the defendant to explain the presence of his automobile in Mississippi. It is not disputed that the automobile which was used and which was caught by the sheriff was in fact the automobile of appellant. In fact, the record shows that he afterwards replevied the car from the sheriff, but he accounts for the car being in Mississippi by saying that on the day before the robbery he loaned his automobile to a man in Memphis, but he testifies that he knew the man just casually; that he did not know his business address and was very indefinite as to his residence address. He further testifies that he never saw this man again after he loaned him the automobile and that he never heard of the car any more until the car was located in Mississippi. Yet he made no effort to secure the car from this man or to get the man. To say the least of it, that is remarkable.

We submit, however, that the evidence in this case presents a clear conflict of questions of fact and it was for the jury to decide, and that they were better able to judge of the credibility of the witnesses than this court for the reason that they had the witnesses before them, and they saw them and heard them on the witness stand. This court has held time after time that it will not disturb the findings of the jury merely because the jury might, without being censurable, have acquitted. See Skinner v. State, 53 Miss. 399, and Gamblin v. State, 658.

In the present case the jury was fully and fairly instructed for the state and the defendant, and the jury was particularly instructed as to the caution which should be exercised by them in considering the testimony

of Westbrook, the accomplice, and with all this, the jury resolved the conflict in the evidence against the appellant, and we submit that there was ample testimony in the record upon which they could and did base their conflict.

The appellant had a fair and impartial trial, and we submit that the cause should be affirmed.

Argued orally by *A. E. Weintein,* for appellant, and *J. L. Byrd,* assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

Appellant was indicted and tried for burglary, convicted and sentenced to one year in the penitentiary, and appeals from said judgment.

The burglary was committed by breaking open I. C. car No. 24490, the property of the Illinois Central Railroad Company in service on the Yazoo & Mississippi Valley Railroad, and taking from said car cigarettes to the value of one thousand and forty dollars.

R. T. Westbrook, a witness, upon whose testimony the conviction is predicated, was an accomplice, who had previously pleaded guilty to the burglary and been sentenced to serve a term in the penitentiary therefor. According to this witness the appellant, Westbrook, and another party by the name of Beaver proceeded from Memphis, Tenn., into Tunica county, Miss., and awaited the arrival of the freight train, and, while said train stopped at a station in Tunica county taking water, the seal of the door of car No. 24490 in said train of cars was broken and the car door opened, and defendants entered and located the cigarettes and before the train reached Lula, Miss., the cigarettes were thrown from the train, and the said parties took said cigarettes and placed them in a cotton house, fastening the door in such way that they could tell if the cotton house was entered when they returned to get the cigarettes.

The burglary occurred on a Monday night and on Tuesday night following the parties returned to the cotton house where the cigarettes were stored, driving in a Ford car belonging to the appellant. On approaching the cotton house they discovered that some one had opened the door. Thereupon, according to Westbrook, he wanted to abandon the enterprise and leave the cigarettes in the cotton house, but Beaver insisted on taking them, and they started loading the cigarettes into the Ford car when another car approached and thereupon the burglars pretended to be pumping up a tire. In this approaching car were the sheriff and his deputies who hailed them and asked if they needed assistance, and they replied that they did not, and the sheriff's car went on down the road. Presently the sheriff returned and threw his flashlight and gun on Westbrook, and he surrendered. The other burglars drove away in the Ford car, but the sheriff fired upon the car and punctured the tire which ditched the car, but the other two men escaped but the car itself was captured. Westbrook gave the sheriff a false name and was placed in jail at Tunica at first and thereafter removed to the jail at Clarksdale at which place he made a confession implicating Beaver and the appellant. Beaver was tried and convicted at the former term of court and sentenced to the penitentiary, and did not appear as a witness in this case.

Westbrook testified that Beaver approached him about needing money, and proposed that they rob a car and get some cigarettes; that they procured information from a negro in the service of the railroad company at Memphis as to the car and number in which the cigarettes were placed for shipment and what time it was due to be billed out of Memphis; that they got in touch with the appellant and the three men proceeded to a point in appellant's Ford car where the freight car was burglarized, secured the cigarettes as above stated, placed them in the cotton house, returned to Memphis, and on the following night drove back to the cotton house in appellant's Ford car.

The sheriff testified that he was notified, on the day following the burglary by the owner of the cotton house, that the cigarettes were in the cotton house and that he, the sheriff, and his deputies were on hand near the cotton house watching for the burglars to return for the cigarettes; that when the Ford car stopped in front of the cotton house that the sheriff and his deputies moved up in the sheriff's car and they were trying to see whether the occupants of the Ford car were loading the cigarettes in the cotton house into the Ford car; that the sheriff directed the driver of his car to slow down and he would ask the occupants of the Ford car whether they needed help; that his driver slowed down, but he (the sheriff) could not see whether the cigarettes were loaded in the car or not; that he desired to wait until the cigarettes were placed in the car before arresting these men, so he proceeded on down the road a short distance and then he and one of his deputies got out of his car, and the driver drove his car down the road apiece; that the sheriff and his deputy returned to the Ford car which was still at the cotton house with the results above stated; that he could not see or identify the other parties who were with Westbrook; that same night that the sheriff arrested Westbrook he called up police headquarters in Memphis and gave them the number of the Ford automobile seized by him; that subsequently a lawyer in Memphis came down with a brother of Westbrook, and this lawyer introduced Westbrook's brother under the fictitious name given by Westbrook and this lawyer also replevied the Ford automobile for the appellant. The cigarettes taken from this Ford car were testified to and identified by the agents of the railroad company as being the property being shipped in I. C. car No. 24490, and which had been checked short at destination.

The defendant introduced a number of witnesses in his defense. He lived in Memphis, Tenn., and proved by his mother that on the Monday night in question he was in company with his mother and his aunt from Texas; that they drove around the streets of Memphis in his au-

tomobile, returning home about ten o'clock p. m. that
night; that they retired about eleven p. m.; that he was
at home that night. Appellant introduced another wit-
ness, a young man living in Memphis, who testified that
they were together in the young man's car on the Tues-
day night in question driving around Memphis; that
they went to a street carnival in the city of Memphis
and were there until about 11:30 p. m. and then went to
a restaurant and had lunch; and that his said friend took
appellant home, reaching there shortly after midnight.
During appellant's absence on Tuesday night, there was
a telephone message for appellant, and his mother an-
swered the telephone and stated that her son was not in,
and when asked when he would be in, replied that he
usually came home about eleven o'clock at night; that
the telephone rang again at eleven o'clock that night,
and again asked for the appellant, and stated that po-
lice headquarters desired that appellant should ring them
up when he returned home that night.

Appellant's mother testified that her son came home
some time after twelve o'clock that night and she told
him about the telephone message from police headquar-
ters, and told him something about his car being found
out of town, but appellant said it was too late for him
to call up police headquarters that night, that he would
go around there the next morning. The following morn-
ing appellant, his mother, and his young man friend who
had been out with him the evening before and who was
not implicated in the robbery by Westbrook, proceeded
to police headquarters and had a conversation with the
officer in charge. Appellant testified that as he came out
of police headquarters that he met an attorney and asked
him for a conference, and he fixed the hour at noon for
the conference at the attorney's office; that when appel-
lant reached the attorney's office he found the brother
of Westbrook there in conference with said attorney;
that the attorney told him he had to come to Mississippi;
that Westbrook was arrested; that while the attorney
was down in Mississippi he would look after appellant's

car for him; that said car was replevied by said attorney. Appellant further testified that he was arrested the night following and gave bond to appear at Tunica, Miss. In corroboration of his mother's testimony, appellant further testified that he had loaned his Ford car to another person in Memphis, whom he named in his testimony, together with his place of residence or business, and that he had never seen said person since the night he loaned him his car until the time of the trial. Appellant testified that said party had done work on his car for him and he had loaned him his car on other occasions.

Defendant introduced a number of witnesses who testified as to his good character for honesty and integrity and for truth and veracity, and that he was entirely honest and dependable. These people were uncontradicted by any testimony and appeared to be persons of character and good standing in the city of Memphis; one witness being a lady and the others business men of the city of Memphis, one of whom was the employer of the appellant who testified that appellant had worked for him a number of years, testifying that he knew appellant was dependable; that he would not have him in his business as a collector unless he had a high reputation for honesty and integrity and that he knew his reputation in said respect; these witnesses also testified that Westbrook had a bad reputation as to honesty and integrity and a bad reputation for truth and veracity; that they would not believe Westbrook, the state's witness, on oath in a court of justice and that he was entirely undependable. Indeed the testimony as to the appellant's good character as to honesty and integrity and as to truth and veracity appears to be as strong as it could be made and was not impeached in any respect. On the other hand, the state witness, Westbrook, was contradicted by statements made out of court which differed from his statements on the witness stand, and Westbrook was shown to have been convicted of other crimes, and that his testimony on the trial of Beaver at the preceding term of court was materially different

in many material respects from his testimony 'on the present trial. ·

As above stated, the connection of the appellant with the crime depends entirely upon the testimony of Westbrook, the state's witness, and the fact that appellant's Ford car was at the scene of the arrest of Westbrook and was seized on that occasion. This is the only corroborating circumstance tending to support Westbrook's story. As above stated, Beaver was not introduced.

It is insisted that the evidence was insufficient to sustain the conviction, and *Wright* v. *State,* 130 Miss. 603, 94 So. 716, is relied on as authority for this contention. In that case, 130 Miss. at page 608, 94 So. 716, said:

"John Eason, the principal witness, upon whose testimony the proof of breaking and entering the storehouse depended; was impeached in every manner known to the law. He was on his own testimony an accomplice. He made statements out of court contrary to his statements in court. He had been convicted of burglary on other occasions and also of other crimes, and it was proven by witnesses knowing his reputation for truth and veracity that he was unworthy of belief and that they would not believe him on oath. The defendant proved by a physician, a white man, and by his landlord, also a white man, that on the night in question the defendant was at his home, and that he procured an order from his landlord to get the doctor to attend a man suffering from epilepsy who lived at Wright's house, . . . and that Wright came for him and was there during the time he was at Wright's house. A large number of negroes also testified that they were at Wright's house on the night in- question between ten and twelve o'clock going to see the afflicted boy. Some of these witnesses remained there the entire night. It was also in evidence that Wright had lived in the community for a number of years and had lived on the premises of his present landlord for seven or eight years, and that he had a good reputation for honesty and fair dealing."

While the *Wright case, supra,* was reversed on the ground of insufficiency of the indictment, we called attention to the insufficiency of this testimony in the following language (130 Miss. at page 610, 94 So. 717):

"While this will dispose of the present indictment, we feel that we ought to say that a conviction ought not to stand upon the evidence in this record. The only incriminating evidence of any consequence is that contained in the testimony of John Eason, who was impeached by every method known to the law while the defendant proved his defense by a large number of unimpeached witnesses, and the evidence clearly preponderates in his favor. If a new indictment should be found, the evidence for the prosecution should be materially strengthened."

In *Hunter* v. *State,* 102 So. 282, we reversed a conviction based on the uncorroborated testimony of an accomplice, who was a person of very low grade intelligence where he was unsupported, and where the defendants had proven by a number of unimpeached witnesses that his reputation for truth and veracity was bad, and where there was strong proof of an alibi by numerous witnesses. In the fifth syllabus to the *Hunter case, supra,* it is said:

"Ordinarily a conviction may be had upon the uncorroborated evidence of an accomplice, but, where the accomplice is barely intelligent enough to be a witness, and where his reputation for truth and veracity has been successfully impeached by unimpeached witnesses, and where such evidence is not corroborated sufficiently, and where there is strong testimony of an alibi by numerous witnesses, a conviction on such testimony of such impeached witness will not be upheld."

As stated in that case, ordinarily the testimony of an accomplice is sufficient to sustain a conviction. At the common law of England a conviction could not be had upon uncorroborated evidence of an accomplice, but this state adopted the rule that testimony of an accomplice, where not unreasonable of itself and not otherwise con-

tradicted, would be sufficient, if believed by the jury to sustain a conviction.

In the case now before us the defendant, a young man twenty-eight years of age, is shown to be a young man of excellent character in the community in which he lives and among the people who know him. He proves an alibi by witnesses who are wholly unimpeached and by his own testimony, which as above stated is shown by his neighbors to be worthy of belief, and where the testimony against the defendant is the testimony of a witness who is admittedly an accomplice, and has been engaged in other crimes and is shown to be unworthy of belief by people who know him, and who know his reputation in the community where he has lived the greater part of his life. The defendant's testimony is said by the attorney-general to be unsatisfactory in the explanation which he gives to account for the presence of his car at the scene of the crime. It may be admitted that such testimony is weak and if the defendant was not supported by an alibi, and if his testimony was not fortified by his good reputation for truth and veracity, it might be that the conviction would be allowed to stand.

We understand the importance of proper law enforcement, and how important it is to society that the guilty be punished, but it is also the duty of the court to protect the innocent and to see that the standards required by law to sustain a conviction are upheld. If the defendant's explanation is in fact false, it will be easily demonstrated on another trial. Likewise if it is true it may be fortified on another trial. At all events, we are of the opinion that the defendant should have a new trial. The judgment will therefore be reversed, and the case remanded for a new trial.

*Reversed and remanded.*