## JONES v. STATE.*

(June 21, 1926. Suggestion of Error Overruled July 22, 1926.)

[109 So. 265. No. 25830.]

CRIMINAL LAW. *When conviction for manslaughter under indictment for murder is reversed on application of defendant, cause stands for trial de novo on original indictment, and defendant may be tried again for murder (Constitution 1890, section 22).*

Under section 22 of the Constitution of 1890, providing that, "No person's life or liberty shall be twice placed in jeopardy for the same offense; but that there must be an actual acquittal or conviction on the merits to bar another prosecution," the last clause of said section has the effect of changing the former rule that on a reversal of a conviction of manslaughter under an indictment for murder, the accused could only be tried on the second trial for manslaughter. Under said constitutional provision, when the judgment of conviction of manslaughter is reversed on the application of the defendant, the cause for trial de novo on the original indictment, and the accused may be again placed on trial for murder.

SMITH, C. J., dissenting.

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, p. 1204, n. 80. Criminal Law, 16CJ, p. 261, n. 12. Former jeopardy in retrial on higher charge after setting aside verdict for lower charge, see notes in 5 L. R. A. (N. S.) 571; 22 L. R. A. (N. S.) 959; 8 R. C. L., p. 161; 2 R. C. L. Supp. 566; 4 R. C. L. Supp., p. 532; 5 R. C. L. Supp., p. 448.

APPEAL from circuit court of Yazoo county.

HON. W. H. POTTER, Judge.

Ethel Jones was convicted of murder, and he appeals. Affirmed.

*J. C. Holmes,* for appellant.

The record presents but a single question: Can a defendant who has been tried on a valid indictment for murder and found guilty of manslaughter thereunder, where the verdict of the jury has been set aside on his application and a new trial granted, again be placed on trial for murder on the same indictment? This involves a construction of the former jeopardy clause of our state Constitution, as the same appeared in section 22, Constitution of 1890, and the Constitution prior thereto.

The question is not new to the jurisprudence of this or other states, and has been answered in the negative by the great weight of authority, including the decisions of our own state. Clark's Crim. Procedure, p. 392, and authorities there cited; 16 C. J. 261 and 272.

The supreme court of Mississippi has followed the majority view and has adhered thereto both prior to and since the adoption of the Constitution of 1890, as appears from the following authorities: *Hurt* v. *State,* 25 Miss. 378; *Rolls* v. *State,* 52 Miss. 391; *Powers* v. *State,* 83 Miss. 699.

It may be argued, however, that the amendment to the Constitution of 1890 has changed the prevailing doctrine of former jeopardy in this state. The amendment added the following clause: ''But there must be an actual acquittal or conviction on the merits to bar another prosecution.''

This amendment, of course, did have the effect of narrowing the general doctrine of former jeopardy. Under the former provision of the Constitution where a defendant was arraigned under a valid indictment in a court of competent jurisdiction and pleaded not guilty, and a jury

was empaneled and sworn to try the issue, he was considered as having been placed in jeopardy. If thereafter the case proceeded with the taking of testimony, but was discontinued because of the discovered disqualification of a juror or, at the instance of the state, the entering of a *nolle prosqui,* or for other cause arising in the progress of the trial but before the verdict of the jury was rendered, the defendant was considered as having been placed in jeopardy and could not again be placed on trial for the same offense. It was such a situation as this that the amendment to the Constitution of 1890 was intended to avoid and, of course, in such state of case a defendant would not be permitted to plead former jeopardy. *Roberts* v. *State,* 72 Miss. 728; *State* v. *Kennedy et al.,* 96 Miss. 624.

The amendment was never intended to and does not, deny to the defendant a plea of former jeopardy where the case has been actually submitted to the jury on its merits and a verdict rendered thereon, because in such case there has been just what the Constitution of 1890 contemplates; viz., an actual acquittal or conviction upon the merits. Such is the case at bar. The trial proceeded to a verdict at the hands of the jury. The jury after the submission of all the evidence, was instructed that they might find the defendant guilty of murder or manslaughter or not guilty. Under these instructions and with all of the evidence before the jury, the jury by its verdict, rendered on the merits of the case, said that the defendant was not guilty of murder, but was guilty of manslaughter.

It cannot be gainsaid that one who has had his case submitted to a jury on a consideration of all of the evidence in the case and the instructions of the court, and has had a finding of the jury of either guilty or not guilty thereon, has been either convicted or acquitted on the merits. The fact that the verdict of the jury may have thereafter been set aside does not change the irresistible truth that he has been either convicted or acquitted. If no application

by the defendant had ever been made to set aside the verdict of the jury, it would not be even suggested that he had not been actually convicted or acquitted on the merits. In such case the question before us, therefore, simply resolves itself into a consideration of whether or not his application to have the verdict set aside is a waiver of his constitutional protection and guaranty. Our court in a case such as the case at bar has said that it is not. This case should be reversed.

*J. L. Byrd,* Assistant Attorney-General, for the state.

The only question for decision on this appeal is: Can a defendant indicted for murder, tried and convicted for manslaughter, who secures a new trial, be again tried for murder? This question was once before this court in the cases of *Callicoat* v. *State,* and *Strickland* v. *State,* 95 So. 318, but the majority opinion does not decide the point. We do not see how we can do better in enlightening the court in the matter than to quote from the brief of the attorney-general of the state upon this very question, in the Strickland case:

"We have a line of authorities in this state illustrated by the *Hurt case,* 25 Miss. 378, which hold that on a prosecution for murder, a finding by the jury that the accused is guilty of manslaughter, is an 'implied' acquittal of the charge of murder. Other cases holding to the same effect are: *Morris* v. *State,* 8 S. & M. 762; *Rolls* v. *State,* 52 Miss. 391; *Powers* v. *State,* 83 Miss. 691, 36 So. 6; *Walker* v. *State,* 123 Miss. 517, 86 So. 337.

"Our court in the *Walker case, supra,* following the doctrine that it was fatal error to grant a manslaughter instruction where the evidence established either murder or the innocence of the accused, and also that a conviction of manslaughter was an 'implied' acquittal of murder, reversed the case and discharged the appellant. The doctrine of 'implied acquittal' is opposed to the weight of authority and can no longer be in force in Mississippi

under the present 'former jeopardy' clause in our Constitution, where the judgment is reversed on application of the accused.

"We see that including the Constitution of 1869 all of our constitutions contain a former jeopardy clause almost identical with that found in the Constitution of the United States. But when our present Constitution of 1890 was adopted, the framers saw fit to modify our 'former jeopardy' clause materially by means of section 22 of our present Constitution.

"I only mention the case of *Morris* v. *State,* 8 S. & M. 762, which was decided in 1847. The court there held in a short opinion that a verdict of guilty on one count was tantamount to an acquittal on the other counts in the indictment. At this time the Constitution of 1832 was in force, but the 'former jeopardy' clause is not mentioned in the opinion.

"We find a lengthy and very elaborate discussion of the exact point in question in *Hurt* v. *State,* 25 Miss. 378, which, by the way, is the only Mississippi case I have been able to find which goes exhaustively into the subject. This case holds that a conviction of manslaughter is an 'implied' acquittal of murder and operates as a discharge of the prisoner. The reasoning of Justice FISHER in that case is the best that I have seen in support of the position taken and under the Constitution of 1832 in effect at that time, may be logically sound. However, many texts on criminal law and various courts, among which is the supreme court of the United States, have adopted the opposite view.

"Then we find the rule to the same effect stated in the *Rolls case, supra,* 52 Miss. 391, decided in 1876, but here no authorities were cited and no reasons are given in support thereof and the 'former jeopardy' clause is not mentioned. In fact this portion of the opinion is mere *dictum.*

"In the *Powers case, supra,* it is also stated that one indicted for murder and convicted of manslaughter can-

not again be placed on trial for murder, and the reason given is the constitutional guaranty against being twice put in jeopardy for the same offense. The *Rolls case, supra,* 52 Miss. 391, is cited for the rule. The *Powers case, supra,* was decided in 1903, when the Constitution of 1890 was in effect, but apparently the court's attention was not called to the material change of the 'former jeopardy' clause after the decision of the Rolls case there relied on.

"A recent decision following the rule laid down in the *Hurt case,* 25 Miss. 378, is *Walker* v. *State,* 123 Miss. 517, 86 So. 337. I have carefully studied the opinion in this case and also the briefs both for the state and the appellant, and find that nowhere is mention made of the material change in our 'former jeopardy' clause of the Constitution of 1890. It was apparently decided upon the idea that our Constitution in this respect was then as it stood in 1869 and prior thereto.

"If we concede for the sake of argument that the Hurt case and the Rolls case announce good law under the Constitutions of 1832 and 1869 respectively, we must admit that the *Powers case,* 83 Miss. 691, 36 So. 6, and the *Walker case,* 123 Miss. 517, 86 So. 337, which plant themselves upon the Rolls case and the Hurt case must fall in view of the explicit provision of section 22 of our present Constitution, which provides that there must be an *actual* acquittal or conviction to bar another prosecution."

I submit that the court should not place such a construction on section 22 of the Constitution as to render meaningless the amendment which appears in 1890. To hold that other than an actual acquittal or conviction would bar another prosecution would be to hold the amendment a nullity so far as the word "actual" is concerned. With all deference to the court, the Powers case and the Walker case are condemned by section 22 of our Constitution, being contrary to the express provisions thereof and that, therefore, these cases should be overruled. The soundness of the rule under discussion was

seriously questioned in *Parker* v. *State,* 102 Miss. 113, 58 So. 978.

It might be argued that the purpose of the amendment was to correct the evil flowing from the decision of the *Teat case,* 53 Miss 349, where it was decided that the accused had been placed in jeopardy when the trial had fairly been entered upon and other cases which allowed the accused to escape a just punishment through technicalities. My reply to this is that while this may be true, it is evident that the framers of the amendment were also seeking to remedy the anomalous situation resulting from the holding in the *Hurt case,* 25 Miss. 378; if not, then why the word "actual?"

Aside from the fact that our Constitution provides that there must be an "actual" acquittal or conviction to bar another prosecution, the leading authorities seem to reject the Mississippi rule, although the cases are by no means in harmony on this proposition. Among the texts on criminal law which state an opposite rule to that adopted by our court are : 2 Watson on the Constitution, p. 1442; 2 Story on the Constitution (4 Ed.) par. 1787; 8 R. C. L., p. 161, par. 153, on Criminal Law; 12 C. J., p. 1204, par. 973, on Constitutional Law; 16 C. J., p. 261, par. 436, where a discussion of both rules is found.

Among the cases holding that if the defendant appeals from a conviction of the lower crime, he thereby waives the implied acquittal on the higher crime, and, that if reversed his position is as if no trial had been had, are : *Trono* v. *U. S.,* 199 U. S. 521, 50 L. Ed. 292, Sup. Ct. Rep. 121; *U. S.* v. *Gonzales,* 206 Fed. 239; *Brantley* v. *State,* 132 Ga. 573, 64 S. E. 676, 22 L. R. A. (N. S.) 959, 131 A. S. R. 218, 217 U. S. 284, 54 L. Ed. 768, 30 Sup. Ct. Rep. 514, 16 Ann. Cas. 1203; *Perdue* v. *State,* 134 Ga. 300, 67 S. E. 810; *State* v. *Mathews,* 142 N. C. 621, 58 S. E. 342, expressly overruling former holdings and following *Trono* v. *U. S.; State* v. *Billings,* 140 Mo. 193, 41 S. W. 778; *State* v. *Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611; *State* v. *Bradley,* 67 Vt. 465, 32

Atl. 238; *Briggs* v. *Commonwealth,* 82 Va. 554; *Bohanan* v. *State,* 18 Neb. 57, 53 Am. Rep. 791; *State* v. *Beheimer,* 20 Ohio St. Rep. 572, 4 A. & E. Ann. Cas. 773, 14 Am. Rep. 752; *Gibson* v. *Somers,* 31 Nev. 531, 103 Pac. 1073, 24 L. R. A. (N. S.) 504; *State* v. *Morrison,* 67 Kans. 144, 72 Pac. 554; *Young* v. *People,* 54 Colo. 293, 130 Pac. 1011; *State* v. *Gillis,* 73 S. C. 318, 53 S. E. 487, 5 L. R. A. (N. S.) 517, 114 A. S. R. 95, 6 Am. & E. Ann. Cas. 993; *Vetch* v. *State,* 60 Ind. 291; *State* v. *Kessler,* 15 Utah, 142, 63 A. S. R. 911; *Turner* v. *Territory,* 15 Okla. 557, 82 Pac. 650; *People* v. *Palmer,* 109 N. Y. 413, 4 A. S. R. 477; *State* v. *Arnold,* 83 Ky. 1, 4 A. S. R. 114.

I have cited cases from the courts of eighteen states. In twelve of these the "former jeopardy" clause is similar to that found in the Constitution of the United States, and also our own Constitution of 1832, in effect when the *Hurt case,* 25 Miss. 378, was decided. These courts, many of which are renowned for their high standing, learning and great ability, have rejected the doctrine announced in the Hurt case as unsound. I think a careful study of the cases decided will likewise convince this court that the Hurt case cannot stand for these reasons:

First, because of the express prohibition of section 22 of our present Constitution requiring an "actual" acquittal to bar another prosecution;

Second, because the judgment of conviction of manslaughter is an entirety and inseparable, and if set aside, the "implied" acquittal goes with it, there being nothing left upon which it can stand;

Third, appellant waives the constitutional guaranty against "former jeopardy" in electing to obtain a new trial after the conviction of manslaughter and thereby forfeits any or whatever right he may have in the "implied" acquittal of murder.

The judgment of the court should be affirmed.

Argued orally by *J. G. Holmes,* for appellant, and *J. L. Byrd,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Ethel Jones, was tried at the October term, 1925, of the circuit court of Yazoo county on an indictment charging him with murder. His cause was submitted to the jury under instructions, one of which instructions defined the verdicts that could be returned which included the three forms of verdicts for murder, a verdict of manslaughter, and a verdict of not guilty. The jury returned a verdict of manslaughter. An application was made by the defendant for a new trial. The verdict of the jury was set aside and a new trial granted, and at the April term, 1926, the state placed the defendant on trial again for murder. The defendant filed a plea of *autrefois acquit* setting up the fact of his former trial and conviction of manslaughter and his acquittal by the jury on said indictment of the charge of murder. The state demurred to this plea and the demurrer was sustained, and the appellant was again placed on trial on the same indictment for the crime of murder and was convicted of murder and given a life sentence. Among the instructions requested was one directing the jury that they could not find the defendant guilty of murder in this case. This instruction was refused. The defendant was sentenced to the penitentiary for his natural life, and appeals.

The sole question presented by this appeal is whether or not in such case a defendant can on a second trial be tried for murder.

Section 22 of the state Constitution of 1890 reads as follows:

"No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

The provision of the state Constitutions prior to 1890 reads as follows:

"No person's life or liberty shall be twice placed in jeopardy for the same offense."

We have had this question before the court heretofore in the case of *Calicoat & Strickland* v. *State,* 131 Miss. 169, 95 So. 318, but the opinion in that case specially reserved the decision of this question; the case being affirmed, and it not being necessary to decide then what the law would be in event the case was reversed and remanded. In *Hurt* v. *State,* 25 Miss. 378, 59 Am. Dec. 225, under the Constitution of 1832 (article 1, section 13) which provided that, "No person shall, for the same offense, be twice put in jeopardy of life or limb," it was held that a conviction of manslaughter on an indictment for murder was an acquittal of murder; and that on a retrial the person so convicted of manslaughter could only be tried for the offense of manslaughter. To the same effect is the case of *Rolls* v. *State,* 52 Miss. 391, decided under the Constitution of 1869. In *Teat* v. *State,* 53 Miss. 439, 24 Am. Rep. 708, also originating and tried under the Constitution of 1869, it was held that where a person was placed on trial on an indictment charging murder, and evidence taken and the jury discharged without the defendant's consent and without legal necessity, the defendant could not thereafter be placed on trial for the same offense under the "double jeopardy" provision of the Constitution. These authorities would, of course, be binding but for the fact of the change in the Constitution made in 1890 as above set out.

It is urged by the appellant that these authorities from Mississippi, above cited, were followed in *Powers* v. *State,* 83 Miss. 691, 36 So. 6, and *Walker* v. *State,* 123 Miss. 517, 86 So. 337. Subsequent to the Walker case, the court had the question before it in the case of *Beauchamp* v. *State,* 128 Miss. 523, 91 So. 202, and the court was evenly divided upon the question as to whether the case was one for the application of the rule announced in the Walker case, and reversed and remanded the case for a new trial without deciding the point. The court

remained divided on the question until the *Calicoat* v. *State* case came before it wherein the doctrine announced in the *Rester case,* 110 Miss. 689, 70 So. 881, and in other cases following, was overruled and the doctrine announced in *Huston* v. *State,* 105 Miss. 413, 62 So. 421, and other cases in line with that case, was adopted. As stated above, the conclusion reached in that case made it unnecessary to decide the question we are now called upon to deal with, and it was expressly reserved. We are now squarely presented with the question, and the construction of the concluding clause of section 22 above set out.

It will be noted from the provisions referred to that the acquittal or conviction must be "actual." What do the words "actual conviction" and "actual acquittal" mean? We are of opinion that the word "actual" is used in the constitutional provision in contradistinction from "implied" or "constructive" acquittals or convictions. And we are also of the opinion that the provision was put in the Constitution for the purpose of changing the rule announced in the *Hurt case, supra,* and in the *Rolls case, supra.* Without these words in their Constitutions, other states have been divided upon the question as to whether a conviction of manslaughter on a charge of murder was such an acquittal of murder as would preclude a retrial of the defendant for murder in case a new trial was granted. A majority of the states passing upon the question have held, in accordance with the Hurt case and the Rolls case, that a conviction of murder was an acquittal of manslaughter; but a minority of the courts with strong reasons have held to the contrary—have held that where a defendant procured a reversal of the verdict of manslaughter the whole trial was nullified and the cause stood for trial *de novo* precisely as though no trial had been had. The reasoning of these opinions so holding is so strong that we are impressed with the idea that the learned members of the constitutional convention, made up as it was of great lawyers, desired to get away

from the rule announced in the Rolls case, in the Teat case, and in the Hurt case, above referred to.

In 8 R. C. L. at page 161, par. 153, entitled Criminal Law, this reasoning is stated in the following language:

"153. *Conviction of Lower Degree of Crime as Acquittal of Higher Degrees.*—A question that has given rise to two well defined rules is whether a conviction of a lower degree of a crime is a complete acquittal of the higher degrees in the sense of the 'twice in jeopardy' rule so that, if a new trial is granted it must be limited to the lower degree of which the defendant was previously convicted. One line of authorities answers this question in the negative and holds that on the new trial the defendant may be tried again for the crime as charged in the indictment, and that he may be convicted of any degree of such crime just as if there had been no previous trial. The reasons given for this rule are that the defendant cannot voluntarily set aside the verdict and also hold to it. A verdict cannot at the same time be of force and not of force. The verdict of guilty is single. The defendant cannot divide it into that which pleases him and that which does not. The positive fact is the verdict of guilty of one offense; and the negative implication from that finding is not guilty of the other offense. It is not easy to see how the positive finding which furnishes the sole basis for the negative implication can be destroyed and set aside by the voluntary action of the accused, and yet leave the implication to stand alone without a basis. To sustain a plea of former acquittal, there must be a sustaining record of an acquittal; and if a verdict of guilty of a lesser offense operates as a record of acquittal of the greater, when it is set aside at the instance of the accused, it is certainly no longer a subsisting record of conviction. The courts holding this view do not agree that the defendant has the right to limit his waiver as to jeopardy when he appeals from a judgment against him. As the judgment stands before he appeals, it is a complete bar to any further prosecution

for the offense set forth in the indictment, or for any lesser degree thereof. No power can wrest from him the right so to use that judgment, but if he chooses to appeal from it and to ask for its reversal he thereby waives, if successful, his right to avail himself of the former acquittal of the greater offense, contained in the judgment which he has himself procured to be reversed.''

The same principle is announced in Story on Constitution (4th Ed.), vol. 2, par. 1787, as follows:

''The meaning of it is, that a party shall not be tried a second time for the same offense after he has once been convicted or acquitted of the offense charged by the verdict of a jury, and judgment has passed thereon for or against him. But it does not mean that he shall not be tried for the offense a second time if the jury have been discharged without giving any verdict; or, if, having given a verdict, judgment has been arrested upon it, *or a new trial has been granted in his favor;* for in such a case his life or limb cannot judicially be said to have been put in jeopardy.''

In 12 C. J., at page 1204, par. 973, it is said:

''But a defendant who has been indicted for a particular offense and convicted of a lesser offense, may on a new trial obtained *on his own motion,* be again tried for the greater offense.''

In *Trono* v. *U. S.,* 199 U. S. 521, 26 S. Ct. 121, 50 L. Ed. 292, 4 Ann. Cas. 773, the supreme court of the United States was called upon to construe the ''double jeopardy'' provision contained in the Federal Constitution, and reached the conclusion that where the conviction was set aside upon the motion of the defendant a trial *de novo* on the original indictment was the proper procedure. In the course of the opinion the court said:

''In our opinion the better doctrine is that which does not limit the court or jury, upon a new trial, to a consideration of the question of guilt of the lower offense of which the accused was convicted on the first trial, but that the reversal of the judgment of conviction opens up

the whole controversy, and acts upon the original judg-
ment as if it had never been. The accused, by his own
action, has obtained a reversal of the whole judgment,
and we see no reason why he should not, upon a new
trial, be proceeded against as if no trial had previously
taken place. We do not agree to the view that the ac-
cused has the right to limit his waiver as to jeopardy,
when he appeals from a judgment against him. As the
judgment stands before he appeals, it is a complete bar
to any further prosecution for the offense set forth in the
indictment, or of any lesser degree thereof. No power
can wrest from him the right to so use that judgment,
but if he chooses to appeal from it, and to ask for its
reversal, he thereby waives, if successful, his right to
avail himself of the former acquittal of the greater of-
fense, contained in the judgment which he has himself
procured to be reversed.  . . .

"When the first trial is entered upon he is then put in
jeopardy within the meaning of the phrase, and yet it
has been held, as late as *United States* v. *Ball,* 163 U. S.
662, 671, 16 S. Ct. 1192, 41 L. Ed. 300, 303 (and nobody
now doubts it), that if the judgment of conviction be
reversed on his own appeal, he cannot avail himself of
the once in jeopardy provision as a bar to a new trial of
the offense of which he was convicted. And this is gen-
erally put upon the ground that by appeal he waives his
right to the plea, and asks the court to award him a new
trial, although its effect will be, if granted, that he will
be again tried for the offense of which he has been once
convicted. This holding shows that there can be a waiv-
er of the defense by reason of the action of the accused.
As there is, therefore, a waiver in any event, and the
question is as to its extent (that is, how far the accused
by his own action may be deemed to have waived his
right), it seems much more rational and in better accord
with the proper administration of the criminal law to
hold that, by appealing, the accused waives the right to
thereafter plead once in jeopardy, when he has obtained

144 Miss.—5.

a reversal of the judgment, even as to that part of it which acquitted him of the higher while convicting him of the lower offense. When, at his own request, he has obtained a new trial, he must take the burden with the benefit, and go back for a new trial of the whole case. It does not appear to us to be a practice founded on solid reason to permit such a limited waiver by an accused party while himself asking for a reversal of the judgment."

In *State* v. *Ash*, 68 Wash. 194, 122 P. 995, 39 L. R. A. (N. S.) 611, the supreme court of the state of Washington overruled its former decisions and aligned itself with the United States supreme court. After quoting with approval from the *Trono case, supra*, that court said:

"This reasoning is to our minds so cogent that we do not deem it profitable to further extend this opinion by enlarging upon it other than to say it preserves all the constitutional and other rights of both parties to a criminal trial, the state and the accused. The announcement of this rule may disturb the guilty who seek, through the intricate mazes of technical and refined subtleties to escape punishment for their evil deeds, as in this case, where to take the contrary view would mean that a murderer who admits his crime and whose only regret is that he was apprehended before his lust for killing was fully satisfied, as he sought a second victim, would be left free to pursue his criminal intent until he had added other victims to his score. Courts should give to all persons accused of crime the benefit of all the law that wisdom has created to shield the innocent from false accusation, but they only bring themselves into ridicule when they seek, through meaningless technicalities and hairsplitting distinctions, to build up a protecting wall behind which the guilty may avoid the penalty of their misdeeds. It is to be deplored that juries will sometimes so forget their sworn duty as to refuse to hold up violators of the law to the full measure of their misdeeds. Courts should not aid in this miscarriage of justice by creating techni-

cal and subtle distinctions in the law, and thus enable the guilty to altogether escape. *We cannot control the verdicts of juries in their failure to make true deliverance between the state and the criminal, but we can refuse to extend the farce so as to make it operate as an absolute discharge.* Believing that a new trial to one found guilty of a lesser offense should, on his appeal, be held a new trial upon all offenses included within the charge that find sustaining facts in the evidence, we so hold, and adopt such rule for our future guidance. It may not be supported by the greater number of adjudicated cases, but it appeals to us as based upon the best reasoning and soundest judgment. It follows that *State* v. *Murphy* [13 Wash. 229, 43 P. 44], and other cases expressing contrary views, are hereby overruled.''

In *State* v. *Bradley,* 67 Vt. 465, 32 A. 238, the court, after discussing other authorities, said:

''But in other states the contrary is held. They say that the necessary result of reversing the judgment and granting a new trial is to set aside the whole verdict, and that having been done at the instance of the accused, it can neither operate as an acquittal nor a bar to the further prosecution of any part of the crime charged; that the verdict being set aside, it leaves at issue and undetermined the question of the homicide and also the question of whether the accused committed it if one was committed; that on the retrial on a plea of not guilty, the legal presumption of innocence prevails, and that the state is bound to prove every essential fact; that the only effect, therefore, that can be given to the part of the verdict that acquitted the accused of murder in the first degree after the rest of it has been set aside is, to regard it as finding the quality of an act, the existence of which is undetermined, which would be a verdict to the effect that if the accused committed the homicide it was not such a killing as made it murder in the first degree, which would be untenable, as there can be no legal determination of the character of the malice of the accused in re-

spect to a homicide that he is not found to have committed, or rather, of which, under his plea, he is presumed to be innocent. A verdict of murder in the second degree is only an implied acquittal of murder in the first degree; and if the verdict from which the inference is drawn is set aside, nothing remains to sustain the inference, and the verdict and its incidents fall together, and the indictment is left to stand as to the crime of which the accused was convicted as though there had been no trial. This view is sustained by *Bailey* v. *State,* 26 Ga. 579; *State* v. *Behimer,* 20 Ohio St. 572; *United States* v. *Harding,* [Fed. Cas. No. 15,301], 1 Wall. Jr. 147 [127] and other cases. We understand this to be the view that has obtained and been practiced upon in this state, certainly when the result of the former trial was not, in effect, as it was not here, an acquittal of another crime charged, but only a failure to find the requisites to aggravate the crime found to a higher grade. *State* v. *Kittle,* 2 Tyler, 471, is not to the contrary.

"Nor does this view contravene the principle that one cannot be twice put in jeopardy for the same offense, for that means, without his consent, and the matter of taking exceptions is a privilege accorded to the accused but not to the state, and he can avail himself of it or not as he pleases. If he does avail himself of it, he thereby asks for a new trial or a discharge altogether, as the case may be, and in asking for a new trial, he is deemed to waive his right to immunity from further jeopardy in case a new trial is granted. *People* v. *Palmer,* 109 N. Y. 413, 420 [17 N. E. 213, 4 Am. St. Rep. 477]. The authorities on both sides of this question are referred to in a note to *Commonwealth* v. *Arnold* (Ky.), 4 Am. St. Rep. 117."

In *State* v. *Behimer,* 20 Ohio St. 572, the court speaking through Mr. Justice WHITE stated the rule as follows:

"But the effect of setting aside the verdict finding the defendant guilty, was to leave at issue and undetermined the fact of the homicide; also the fact whether the defendant committed it, if one was committed. The legal presumption on his plea of not guilty, was of his inno-

cence; and the burden was on the state to prove every essential fact. The only effect, therefore, that could be given to so much of the verdict as acquitted the defendant of murder in the first degree, after the rest of it had been set aside, would be to regard it as finding the qualities of an act while the fact of the existence of the act was undetermined. This would be a verdict, to the effect, that if the defendant committed the homicide, he did it without 'deliberate and premeditated malice.' ''

The supreme court of Nevada, in the case *In re Somers,* 31 Nev. 531, 103 P. 1073, 24 L. R. A. (N. S.) 504, 135 Am. St. Rep. 700, after quoting with approval the *Behimer case, supra,* and the *Trono case, supra,* and other leading cases, used the following language:

"Counsel for the petitioner in the present case, because of the fact that the petitioner was indicted for murder and convicted of involuntary manslaughter, contends that involuntary manslaughter, which does not contain all the elements of murder, acquits the defendant of murder in the first or second degrees and voluntary manslaughter, and is privileged to interpose a plea of former acquittal and of being once in jeopardy as to these crimes, and that on a retrial he cannot be tried for either murder or any other crime under the indictment. While we are duly impressed with the fact that involuntary manslaughter does not contain the same heinous ingredients necessary to make up the crime of murder in the first or second degree, or of voluntary manslaughter, yet we are clearly of the opinion that, if being an unlawful transgression of the law against homicide, it may properly be considered a lesser degree of homicide, and that a jury, under an indictment for murder, may properly return in proper cases a verdict of involuntary manslaughter. *Being of the opinion, as above expressed, that where a defendant is indicted for murder, and upon his demand the cause reversed and remanded for a new trial, the accused must be tried under the original indictment as though he had never been on trial before,* if said indict-

ment is not impaired by the judgment of the supreme
court, and that involuntary manslaughter, being of the
same species of crime, though of a much lesser degree of
homicide than murder, we fail to see the merits of the
contention of petitioner in his plea of former acquittal
or of being once in jeopardy interposed to any greater
offense under the indictment than that for which he was
convicted.

"We are not unmindful in so holding, nor do we any
the less fail to recognize, the merit and sacredness of the
great constitutional right secured for us by the blood of
our forefathers, now incorporated in the principle which
has descended to us from Magna Charta, and now found
imbedded in our Federal and state Constitutions, where-
in it is guaranteed that 'no person shall be subject to be
twice put in jeopardy for the same offense' (section 8,
article 1, Const. Nevada), and the additional safeguard
extended and thrown around this principle by our leg-
islature that 'no person shall be subject to a second prose-
cution for a public offense for which he has been prose-
cuted and duly convicted or acquitted' (section 3996,
Comp. Laws); but we are of the opinion, and we believe
the law is well settled, that where a defendant is con-
victed, and he asks for a second trial to relieve himself
of the jeopardy in which he finds himself by reason of
the conviction and judgment, and his prayer is granted,
he is estopped from asserting a formal acquittal on his
second trial, and waives his constitutional right of plead-
ing being once in jeopardy, or that this right has been
in any way infringed, because by his own voluntary con-
sent, act, and petition he has been relieved of the bar
which prevents him interposing this plea."

In *Young* v. *People,* 54 Colo. 293, 130 P. 1011, the su-
preme court of that state said:

. "This provision of the Constitution needs no construc-
tion; it is as plain and clear as language can make it.   It
means: First, if the jury disagree, that the accused may
be tried again upon the charge as if no trial had been

had; second, if the judgment be arrested after the verdict, for any reason, that the defendant shall be deemed not to have been in jeopardy, and may be again tried as originally; and, third, if the judgment be reversed for error in law, that then the defendant shall be deemed not to have been in jeopardy, and may be again tried under the information, upon every charge contained in it. If the defendant in this case had not been in jeopardy, and such is declared to be the fact upon the record, by this provision of the Constitution, the former judgment having been reversed for error in law, then he could be lawfully tried for and convicted of the highest degree of crime contained in the charge. Upon a reversal of a conviction for error of law, under this provision, one accused of murder stands as though there never had been a former trial; his second trial is *de novo.* The same presumption of his innocence of any degee of unlawful homicide, although he has been convicted of one degree thereof, prevails as upon the first trial. The accused stands upon a second trial as though the former trial had never taken place, and the state stands in precisely the same position. This is the evident purpose and intent of the framers of our Constitution. *Unless it be assumed that the criminal laws are designed to facilitate the escape from just punishment of those charged with offenses, instead of for the protection of society through punishment of those who violate its laws, the above interpretation must be accepted as correct.*"

See, also, *State* v. *Gillis,* 73 S. C. 318, 53 S. E. 487, 5 L. R. A. (N. S.) 571, 114 Am. St. Rep. 95, 6 Ann. Cas. 993; *State* v. *Kessler,* 15 Utah, 142, 49 P. 293, 62 Am. St. Rep. 911; *People* v. *Palmer,* 109 N. Y. 413, 17 N. E. 213, 4 Am. St. Rep. 477; *Brantley* v. *State,* 132 Ga. 573, 64 S. E. 676, 22 L. R. A. (N. S.) 959, 131 Am. St. Rep. 218, 16 Ann. Cas. 1203; affirmed in 217 U. S. 284, 30 S. Ct. 514, 54 L. Ed. 768; *State* v. *Billings,* 140 Mo. 193, 41 S. W. 778; *State* v. *Ash,* 68 Wash. 194, 122 P. 995, 39 L. R. A. (N. S.) 611; *State* v. *Matthews,* 142 N. C. 621, 58 S.

E. 342; *Briggs* v. *Commonwealth,* 82 Va. 554; *Bohanan* v. *State,* 18 Neb. 57, 24 N. W. 390, 53 Am. Rep. 791; *State* v. *Morrison,* 67 Kan. 144, 72 P. 554.

If a verdict of manslaughter impliedly acquits the defendant of murder, it also impliedly adjudges that he is not innocent. One implication flows as necessarily and readily from a conviction of manslaughter as the other. To hold that an appellant can appeal and set aside a judgment of conviction of manslaughter and annul the verdict upon which it is entered, and upon which no other judgment could be entered, is to leave the shadow without the substance; to leave the implied and remove the actual thing upon which the implication is based. If the verdict convicting of manslaughter is destroyed, it is difficult for the reasoning mind to see how any implied verdict or judgment can exist.

The case of *Powers* v. *State,* 83 Miss. 691, 36 So. 6, does not decide the question we are here dealing with, and although the court used language carrying the idea that a conviction of manslaughter was an acquittal of murder, it was unnecessary for it to so say, because the appellant in that case had only been tried for manslaughter when the case was remanded. He was indicted for murder and tried and convicted of manslaughter and appealed, and the case was reversed by this court (74 Miss. 777, 21 So. 657). Upon remand of the cause to the court below, he was then tried for manslaughter and not murder, and again convicted of manslaughter, and appealed a second time to the supreme court. The constitutional provision which we are now considering was not referred to in briefs in that case nor in the opinion of the court, and the question was not then before the court; but as the case has probably misled the bar and the courts, we will overrule it to the extent that it deals with this question, but not otherwise.

The *Walker case,* 123 Miss. 517, 86 So. 337, relied on by the appellant, was founded upon the Rester case and was necessarily overruled by the court in the line-up of

the cases before it, as were all of the cases founded upon and following, in its pronouncement upon the effect of a conviction being an acquittal of murder. Where the judgment of conviction is not reversed on appeal by the defendant, the defendant has a right to stand upon the verdict and judgment if he desires to do so, but if he does not choose to abide by the verdict and conviction and causes it to be set aside, he must then stand trial upon the original indictment.

The principle announced in *State* v. *Longino,* 109 Miss. 125, 67 So. 902, Ann. Cas. 1916E, 371, and *Odom* v. *State,* 132 Miss. 3, 95 So. 253, does not arise here as far as it applies to the right of the defendant to be governed by the existing decisions at the time of his trial, because the *Calicoat case,* 131 Miss. 169, 95 So. 318, was decided prior to the commission of his offense and prior to his making a motion for a new trial, and the court expressly reserved the decision of this point until it should properly arise. Consequently the defendant knew the question was an open question for future decision in this court, and cannot avail himself of the chance he then took for procuring a new trial. The judgment of the court below will therefore be affirmed.

*Affirmed.*

SMITH, C. J. (dissenting).

Section 22 of the state Constitution adopted in 1890 provides:

"No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

And section 1416, Code of 1906, Hemingway's Code, section 1166, provides that—"when a defendant is acquitted on the merits of his case, . . . such acquittal shall be a bar to any subsequent accusation for the same offense," etc.

In order, therefore, to determine whether or not the appellant's conviction of manslaughter on an indictment charging him with murder is a bar to his subsequent prosecution for the crime of murder charged in that indictment, two questions must be decided:

(1)   When an indictment includes two or more offenses of varying degrees, is a general verdict of conviction of one of the lesser offenses an acquittal of the higher offenses charged in the indictment?

And, should this question be answered in the affirmative—

(2)   In such case, when the verdict of conviction of the lesser offense is set aside on application of the defendant, is the acquittal of the defendant of the higher offenses charged in the indictment also thereby set aside and annulled?

I take it for granted that my associates do not intend by the decision here rendered to overrule the long line of cases by which this court has answered the first of these questions in the affirmative, and will proceed at once to the discussion of the second.

The courts are divided on what should be the answer to this question, but the majority of them which have dealt therewith answer it in the negative. 16 C. J. 261; 8 R. C. L. 161; and Clark's Criminal Procedure, 392. It would serve no good purpose to set forth the reasons on which these two conflicting views rest, nor to cite cases from other courts bearing thereon, for in 1853 this court's predecessor, the High Court of Errors and Appeals, in *Hurt* v. *State,* 25 Miss. 378, 59 Am. Dec. 225, aligned itself with those courts which answer this question in the negative in an opinion which evidences that the court gave the question the most thorough consideration, and which has been followed by this court without deviation therefrom until to-day. In that case the court said:

"A verdict of a jury finding a party put upon his trial for murder, guilty of manslaughter in the third degree, must of necessity operate as an acquittal of every crime

of a higher grade, of which he might have been convicted under the indictment upon which the issue was made; otherwise the party, after undergoing the sentence for manslaughter, might be put upon his trial for the charge of murder, which would thus be only postponed, and not decided by the verdict of manslaughter.

"The jury in such case, in contemplation of law, render two verdicts; one acquitting the accused of the higher crime charged in the indictment; the other finding him guilty of an inferior crime. They must first determine his guilt or innocence upon the charge made by the indictment, before proceeding to consider whether he is guilty of an inferior crime. The verdict of manslaughter is as much an acquittal of the charge of murder, as a verdict pronouncing his entire innocence would be; for the effect of both is to exempt him from the penalty of the law for such crime.

"But it is said, that such verdict only operates as an acquittal while it is permitted to stand as part of the action of the court below; and as it has been set aside by this court, upon the prisoner's own application, the cause must be treated in all respects as if no trial had taken place."

The court then proceeded to show the fallacy of this contention and, among other things, said:

"It may be true, that no formal judgment of acquittal was entered; but we hold that the sentence of the court upon the verdict of manslaughter, was of itself a complete acquittal of all higher crimes of which the party might have been convicted under the indictment. It will not do to say, that the reversal of the sentence against the party, also destroys the verdict and judgment by operation of law in his favor. The former being against the party, could be made the subject of revision upon a writ of error to this court. The latter being in the party's favor, was final, conclusive, and irreversible. Neither he nor the state could ask a revision of such judgment, upon a writ of error to this court; and having no

power to revise it, we have no authority to reverse or annul it. It still stands, therefore, wholly unaffected by our action upon the writ of error.''

But it is said that that case was decided under the Constitution of 1832, and that the rule there announced has been changed by the Constitution of 1890. The provision of the Constitution of 1832 (article 1, section 13), is that, ''No person shall, for the same offense, be twice put in jeopardy of life or limb,'' and the only material change which the Constitution of 1890 makes therein is the addition thereto of the words, ''but there must be an actual acquittal or conviction on the merits to bar another prosecution.'' This language simply defines the word ''jeopardy;'' or, to be more accurate, it simply fixes the time at which jeopardy attaches and can be pleaded in bar of a subsequent prosecution. It does not deal in any way with the rights of a defendant who has obtained the setting aside of a verdict of guilty rendered against him; nor does it define the phrase ''actual conviction or acquittal on the merits.'' Both of these questions are left by it for determination under the same rules by which they had been theretofore determined. If the convention intended to change the rule theretofore in force for determining either of these questions, it would have been very easy for it to have done so in language that could not mislead.

But it is said that under this language only an actual and not an implied acquittal will bar a subsequent prosecution. The word ''implied'' is evidently here used in the sense of ''constructive,'' for the latter is the word ordinarily used in law as contrasted with ''actual.'' 1 Bouvier's Law Dictionary (3d Ed.) 130. And the word ''actual'' is the one ordinarily used in law as contrasted with ''express.'' 2 Bouvier's Law Dictionary (3d Ed.) 1510. I, of course, agree that under this language of the Constitution a constructive acquittal will not bar a subsequent prosecution for the same offense, for that is exactly what, in my judgment, the language was intended

to accomplish, and what this court held in *Roberts* v. *State,* 72 Miss. 728, 18 So. 481, it does accomplish.

The word "actual" means "real" and (to repeat) is used in opposition to "constructive." Bouvier's Law Dictionary (3d Ed.) 130. The word "acquittal" is "*verbum equivocum,* and may in ordinary language be used to express either the verdict of a jury or the formal judgment of the court that the prisoner go thereof without day." The acquittal which results from the verdict of a jury is actual, but the acquittal which results from a formal order of a court that the defendant go thereof without day, based on something other than the verdict of a jury, is not an actual acquittal, but is merely the equivalent thereof, or in other words is only a constructive acquittal. The question that then arises is: Was the appellant acquitted of the crime of murder on his former trial by the verdict of a jury? That he was so acquitted is not open to question, for it was expressly so held by the High Court of Errors and Appeals in the *Hurt case, supra,* wherein, as hereinbefore stated, the court said:

"The jury in such case, in contemplation of law, render two verdicts; one acquitting the accused of the higher crime charged in the indictment; the other finding him guilty of an inferior crime. They must first determine his guilt or innocence upon the charge made by the indictment, before proceeding to consider whether he is guilty of an inferior crime. The verdict of manslaughter is as much an acquittal of the charge of murder, as a verdict pronouncing his entire innocence would be; for the effect of both is to exempt him from the penalty of the law for such crime."

If the jury in such a case actually returns two verdicts, as it has the right to do, one acquitting the defendant of the higher offense and one convicting him of the lesser, the court must receive and render judgment on each of them; and in that event the state would have no right to have the verdict of acquittal set aside although there

might be error therein. *State* v. *Anderson,* 3 Smedes &
M. 751. And as the two verdicts and judgments are
separable, in fact are separate and distinct, the defend-
ant would have the right to appeal from the judgment
convicting him, and the court would be without power in
setting it aside to disturb the verdict and judgment by
which he was acquitted of the higher offense.

It will not be necessary for us to wander far afield in
order to ascertain why this language was added to the
former jeopardy provision of the prior Constitution, and
what the members of the convention that adopted it
thought they had accomplished thereby. The two sources,
to which only it will be necessary for us to go for this
information, are the decisions of this court and its pre-
decessors rendered prior to the adoption of the present
Constitution, and the journal of the convention which
adopted that Constitution.

There is a conflict in the authorities as to when jeopar-
dy attaches, some courts holding that it attaches only
after verdict; but the majority thereof hold:

"That a party is placed in jeopardy whenever, upon
a valid indictment in a court of competent jurisdiction
and before a legally constituted jury, his trial has been
fairly entered upon; and that if thereafter the jury is
illegally, improperly and unnecessarily discharged by the
court, it operates as an acquittal, so that he can never
thereafter be arraigned for the same offense." *Teat* v.
*State,* 53 Miss. 439, 24 Am. Rep. 708; 16 C. J. 236; 8 R.
C. L. 138.

In 1823 the original supreme court of this state, the
predecessor of the High Court of Errors and Appeals,
in *State* v. *Moor,* Walk. 134, 12 Am. Dec. 541, felt called
on to construe that clause of the Fifth Amendment to
the National Constitution which provides that "nor shall
any person be subject for the same offense to be twice
put in jeopardy of life or limb," and held that under it
jeopardy does not attach until after verdict. In 1858
the High Court of Errors and Appeals, in *Price* v. *State,*

36 Miss. 531, 72 Am. Dec. 195, in construing the former jeopardy clause of the Constitution of 1832, used the following language:

"As to the objection, that the party is protected by the Constitution from being twice put in jeopardy, it appears to be clear that the sense of the Constitution is, that no man shall be a second time put upon trial for the same offense, after having been once tried, and either convicted or acquitted of the same offense."

This case has never been expressly overruled, but in several cases, among which are *Whitten* v. *State,* 61 Miss. 717, and *Helm* v. *State,* 66 Miss. 537, 6 So. 322, pleas of former jeopardy based on the discharge of the jury without its having reached a verdict were allowed to prevail. The language hereinbefore quoted from the Price case was disposed of in the Helm case by the statement that it was "broader than warranted by the facts of the case." The Whitten case was decided in 1884, and the Helm case in 1889, the first six and the latter less than one year before the convening of the convention which adopted the Constitution of 1890. Whitten's counsel, Judge EDWARD MAYES, was a member of that convention, and was the chairman of its Committee on Bill of Rights and General Provisions, Journal of the Mississippi Constitution Convention of 1890, p. 22. For brevity this journal will be hereinafter referred to as "Journal." The language in which the former jeopardy section of the proposed Constitution was reported to the convention by its committee on Bill of Rights and General Provisions was as follows:

"That no person, after being once finally convicted or acquitted of a criminal charge on merits, shall be again, for the same offense, put in jeopardy of life or liberty; and if any jury to which a criminal case has been submitted or offered shall fail to render a verdict, the court may in its discretion, discharge the jury and commit or bail the prisoner for trial at the next term of court, or at the same term." Journal, pp. 165 and 342.

When the report of this committee came on for consideration by the convention and when section 20 thereof was reached, Mr. HUDSON (of Yazoo county in which the case of *Helm* v. *State, supra,* had been tried only a few months before) submitted a substitute for section 20, as follows:

"No person's life or liberty shall be twice placed in jeopardy for the same offense, but there must be an actual final acquittal or conviction on the merits to bar another prosecution, and when there is a conviction for manslaughter under a charge of murder, and a new trial is granted, this shall not operate as a bar to the conviction of murder on a subsequent trial under such charge.

"Mr. Chrisman moved to lay the substitute of Mr. Hudson on the table, and the ayes and noes being called, said substitute was laid on the table. . . .

"Mr. Hudson moved to amend section 20 by adding thereto, 'and this action of the jury or court shall not be considered in a plea of former jeopardy,' which amendment was, on motion, laid on the table, and on further motion section twenty (20) was adopted.

"Mr. Palmer moved a reconsideration of the vote by which the substitute of Mr. Hudson, for section 20, was rejected, and the section was adopted. Journal, pp. 507, 508.

"Mr. Palmer called up his motion to reconsider the vote whereby the substitute offered by Mr. Hudson for section 20 of the report of the committee on Bill of Rights was rejected, and the said section as reported by the committee, adopted, and on motion said vote was reconsidered.

"Mr. Dean in the Chair.

"Mr. Taylor moved to amend substitute of Mr. Hudson by striking out all after the word 'prosecution' in said substitute, and the ayes and nays being called, said amendment was adopted. . . .

"Mr. Dabney moved to further amend said substitute by striking out the word 'final,' which was adopted, and on further motion said substitute was adopted as amended, as section 20 of said report." Journal, p. 514.

The section then read as follows:

"No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

The section was then referred to the committee on revision and was incorporated by it in its final draft of the Constitution as section 22 thereof. Journal, pp. 583, 638 and 641.

It is clear from these excerpts from its Journal that what the convention which adopted the Constitution of 1890 intended to accomplish, by its revision of the former jeopardy provision of the Constitution of 1869, was to repudiate the construction placed on the word "jeopardy" by the High Court of Errors and Appeals in the Teat case, and thereby withdraw the protection of that section of the Constitution from persons who have been only constructively and not actually acquitted of crime. This court so held, as I have hereinbefore said, in *Roberts* v. *State,* 72 Miss. 728, 18 So. 481, wherein it said:

"The last clause of this section changes, fundamentally, the old rule, and wisely puts an end to the unmeritorious escape of persons charged with crime, who had been only technically, not really, once tried. It was put into the Constitution in the interest of due and proper administration of the criminal law, is too plain for construction, [and] means exactly what it says."

In the light of that case and these excerpts from the Journal of the convention which adopted the Constitution of 1890, I am at a loss to understand how it can be said:

"That the learned members of the Constitutional convention made up as it was of great lawyers, desired to get away from the rule announced  .  .  .  in the Hurt case."

In other words, that they intended to provide that—"When there is a conviction for manslaughter on a charge of murder, and a new trial is granted, this shall not operate as a bar to the conviction of murder on a subsequent trial under such charge."

Judge HUDSON attempted, as hereinbefore set forth, to add that language to the section, but the convention expressly refused to permit him so to do.

Since the Constitution of 1890 was adopted, this court has reaffirmed the rule announced in the Hurt case, and again held that a conviction of the lesser of several offenses charged in an indictment is an acquittal of the higher offenses; and that the setting aside of the conviction of the lesser offense does not set aside or nullify the acquittal of the higher offenses. *Powers* v. *State,* 83 Miss. 691, 36 So. 6; *Walker* v. *State,* 123 Miss. 517, 86 So. 337.

But it is said that the Powers case "does not decide the question we are here dealing with, and although the court used language carrying the idea that a conviction of manslaughter was an acquittal of murder, it was unnecessary for it to so say, because the appellant in that case had only been tried for manslaughter when the case was remanded." In that case the court not only "used language carrying the idea that a conviction of manslaughter on an indictment charging the defendant with murder is an acquittal of murder," but it expressly so held, and also that such acquittal is not set aside and annulled when the conviction of manslaughter is set aside. The holding of the Powers case that a conviction of manslaughter on an indictment for murder is an acquittal of murder is here not in dispute, but the question that is here in dispute is whether or not the acquittal of murder in such case is set aside and annulled by the setting aside of the verdict of manslaughter.

The response to that question in the Powers case was clear and was called for by the question there presented to the court for decision. In that case the appellant was

tried on an indictment for murder and convicted of manslaughter. This conviction was set aside on an appeal to this court (74 Miss. 777, 21 So. 657), and on the return of the case to the court below the defendant was tried for manslaughter on the original indictment, which charged him with murder, and from a conviction of manslaughter he again appealed to this court. One of the assignments of error was that the court below erred in placing him "on trial for manslaughter on the indictment charging him with murder, and upon which he had previously been acquitted of murder." *Powers* v. *State,* 83 Miss. at page 697, 36 So. 6. The argument in support of this assignment of error was:

"That it works a hardship upon the parties accused of crime to be forced to stand trial on an indictment charging a crime graver than the one for which they can then rightfully be convicted."

The ground on which the court overruled this assignment of error, as clearly appears from the language there used, was that the appellant was not prejudiced by being placed on trial for manslaughter on an indictment charging him with murder of which he had been previously acquitted, because he was not thereby, and could not be again, placed on trial for murder, but only for manslaughter; "the reason being that he has a constitutional guaranty that he shall not be twice placed in jeopardy for the same offense." It is also said that after the decision of the Walker case, this question was again presented to this court for decision in the case of *Beauchamp* v. *State,* 128 Miss. 523, 91 So. 202, and the court was evenly divided upon the question as to whether the case was one for the application of the rule announced in the Walker case. The question on which the court was evenly divided in that case was whether, under the Rester case, Beauchamp's conviction of manslaughter should be reversed on the ground that the evidence disclosed that he was guilty of murder or nothing. Because of this division the court was unable to reverse Beauchamp's

conviction of manslaughter on that ground, and therefore did not reach, and could not have considered, the question here under consideration.

Of the Walker case it is also said:

"That it was founded on the Rester case and was necessarily overruled by the court in the line-up of the cases before it, as were all of the cases founded upon and following its pronouncement upon the effect of a conviction being an acquittal of murder."

I presume that the reference here intended to be made is to the line-up of cases in the opinion rendered in *Calicoat* v. *State,* 131 Miss. 169, 95 So. 318. Walker was convicted of manslaughter on an indictment charging him with murder. The evidence contained no element of manslaughter, but disclosed that he was either guilty of murder or was innocent. He was tried twice, the verdict in the first trial being for manslaughter, which was set aside; on the second trial he was again convicted of manslaughter, and appealed to this court. The court below had charged the jury on the law of manslaughter, and on the appeal two questions were presented to this court for decision: (1) In a trial on an indictment for murder wherein the evidence disclosed that the defendant was either guilty of murder or of nothing, was the granting by the trial court to the state of a manslaughter instruction error? (2) In such a case does the verdict of guilty of manslaughter operate as an acquittal of the charge of murder? Both of these questions were answered by the court in the affirmative.

The Calicoat case was also one wherein the conviction was for manslaughter on an indictment for murder, and the evidence disclosed that the defendant was guilty of murder or of nothing. The briefs of counsel presented to the court for decision the same questions that were presented in the *Walker case* (131 Miss. pages 170 and 173, 95 So. 318). The court in responding to the first of these questions, to which it expressly limited its decision (see pages 188 and 190 of 131 Miss. [95 So. 318]), over-

ruled its holding on that question in the Rester and Walker cases, and returned to its former contrary holding thereon in *Huston* v. *State,* 105 Miss. 413, 62 So. 421, and held that the appellant could not complain of his conviction of manslaughter though the evidence disclosed that he was guilty of murder or of nothing. This rendered it wholly unnecessary for the court to discuss the second question presented in the briefs of counsel, and any opinion that it might have expressed thereon would have been mere *dicta.* The right of the court to decide that question could have arisen only after the court had reversed the conviction for manslaughter, and the court expressly so held, for in concluding its opinion it said:

"Since our views lead to an affirmance of the case, we are not here presented with other questions argued by counsel."

It is clear, therefore, that the court there neither overruled the Walker case in so far as it decided the question here under consideration, nor reserved that question for further consideration. It is true that in dissenting from the affirmance in that case Judges ETHRIDGE and ANDERSON stated what in their opinion should be the answer to the second of these questions, but it will hardly be contended that the court is in any way bound thereby.

The Powers and Walker cases stand unaffected by any decision of this court rendered subsequent thereto until to-day, and, in my judgment, should not now be departed from or overruled.

In the Hurt case the High Court of Errors and Appeals could have aligned itself with those courts which hold that when a verdict of conviction of a lesser offense is set aside, the verdict of acquittal of the higher offense charged in the indictment is also set aside and annulled, and I cheerfully admit that such a holding would have met with my approval. Nevertheless this court should not now overrule that case and depart from the rule there laid down, for no case should be overruled unless it is manifestly wrong and is mischievous in its results,

and it can hardly be said that a rule which is in accord with the weight of authority, and has been consistently enforced by this court for more than seventy years, is manifestly wrong.

Moreover, the Constitution of 1890 has been in effect for more than thirty-five years, and the rule announced in the Hurt case has been uniformly applied thereto, and when this appellant decided to ask that his conviction of manslaughter be set aside, he had the assurance of this court, on which he had the right to rely, that in so doing he would run no risk of being thereafter tried for murder. The decision now rendered subjects him to a punishment to which he was not subject under the law as interpreted by this court when he applied for and obtained the setting aside of his conviction of manslaughter, and with deference I submit brings the case within the rule announced in *State* v. *Longino,* 109 Miss. 125, 67 So. 902, Ann. Cas. 1916E, 371, wherein this court held that to permit punishment to be inflicted under analogous circumstances violates that provision of the Constitution which prohibits cruel and unusual punishment and also the spirit, though not the letter, of that provision thereof which prohibits the enactment of *ex post facto* laws. If the rule here under consideration was merely one of procedure, no constitutional right of the appellant would here be violated; but his right not to be now punished for murder does not depend on a rule of procedure, but on a rule of substantive law.

The ground on which the Longino case is said not to here apply is because in the Calicoat case, which was decided before the offense for which the appellant was here tried was committed, "the court expressly reserved the decision of that point" (whether a defendant convicted of manslaughter on an indictment for murder can be again tried for murder after his conviction of manslaughter has been set aside) "until it should properly arise." As I have hereinbefore pointed out, no such reservation was made by this court in the opinion rendered

by it in that case, but if it had the appellant's rights there-
under as announced in the Longino case could not have
been thereby affected.