### STATE v HOBBS

Ohio Appeals, 1st Dist., Butler Co.

Decided Dec. 2, 1937

Paul A. Baden, Hamilton, for appellee.
W. C. Shepherd, Hamilton, Fred B. Cramer, Middletown, for appellant.

## OPINION

By HAMILTON, J.

Hobbs was convicted by a jury in the Common Pleas Court of Butler County under the third count of an indictment, charging him with the killing of a person in attempting to perpetrate a burglary. He was found guilty of murder in the first degree, without a recommendation of mercy He prosecutes an appeal to this court on questions of law.

Several points of error are stressed, but only one of the errors complained of is sufficiently important to consider. That question involves Special Charge No. 1, requested by the state and given to the jury. It is as follows:

"The court instructs you that if you find from the evidence that the defendants, William Hobbs and Charles Vincent Rose, or either of them, pursuant to a conspiracy or common design, entered upon the premises occupied by Mike Vertich in the city of Hamilton, Butler county, Ohio. with intent to break and enter the building on said premises, and said defendants, or either of them, committed some overt act in attempting to break and enter said building, then the defendant, William Hobbs, would be guilty of attempting to perpetrate a burglary."

As an abstract proposition of law, this charge is defective, in that it fails to state that the attempted breaking was for the purpose of stealing, which is necessary in the common law definition of burglary. Is that omission prejudicial to the appellant in this case?

The strict rule applying to special charges in civil cases does not apply in a criminal case. Indeed, they may be refused entirely by the trial court in a criminal case. We, therefore, must consider this charge in the light of the facts as shown by the record.

Hobbs made a confession under the interrogation of the officers and the prosecuting attorney. This confession is important as bearing on the question of intent. It will be noted that the charge in question was apparently intended by the prosecutor and by the court to be a special charge on the aiding and abetting statute, and the necessity of an overt act to show the attempted burglary. The words "with intent to steal" were evidently overlooked in considering the main object of the charge.

Let us consider the evidence as bearing on the question of the intent to steal.

Under the interrogation of the prosecuting attorney, Hobbs states as follows:

"Q. Where did you intend to go that night when you started out with John Agnew?

A. No certain place set.

"Q. Going out to get some money?

A. He said 'get up' and I was drinking and he said 'get up, let's go out and make some money.'

"Q. Did you know what he meant by that?

A. Well, I didn't hardly know exactly how he meant it—I ain't knowed him over three or four weeks.

"Q. You knew you weren't going out and work at that time of the night?

A. Yes.

"Q. You knew you were going out to steal something?

A. He didn't say that we was going to steal.

"Q. But you knew in your own mind what you were going to do?

A. Yes."

In the confession of Charles Vincent Rose he states:

"We left there with John Agnew driving and he drove out to the National Dairy on the Middletown Pike and on the way Agnew said there was a safe in there that would be easy to take off. We looked at the Dairy and there was a light burning so we left the Dairy and came back to town. John Agnew said, 'I know a place up on 3rd street that would be easy.' We asked him where it was. He said, 'up by Niles on North 3rd street.' After he said where the place was I knew the place he meant which was Mike Vertich's Place as I had drank beer there before."

Chief of Police Calhoun testified that after the arrest of the three men, of which the defendant was one, he took them out to where the killing took place and the building which they attempted to burglarize. He testified:

"I asked what they did when they got to the rear of the place (Vertich's place) that night. Rose says in the presence of Hobbs * * * 'We walked through this gate and we went up on the cellar door that leads to a window. Rose tried to raise the window. We tried again and Rose says this window won't open.' I turned to Hobbs and said is that how you tried to get in the window? He said 'yes'. So i said then 'What did you intend to do?' He said 'we intended to go to the front and break in the front.' I said to Rose 'What did you expect to break in with?' Hobbs answered 'we intended to find something.' "

While attempting to break into the building, the deceased officer came upon the ground, and defendant Hobbs fired three shots from his revolver, killing the officer.

The evidence is undisputed that they started out to commit a burglary and get some easy money. They prepared themselves by taking a few drinks, going to a sister's, getting revolvers, loading the same, and started out to burglarize some establishment or place to get something. As Hobbs said in his confession: While Agnew didn't say that "we was going to steal", but he knew in his own mind what he was going to do.

The third count of the indictment charges:

"And the Jurors of the Grand Jury aforesaid at the time and place aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do further find and present that said William Hobbs, Charles Vincent Rose and John Agnew, late of said county, on or about the 12th day of April in the year of our Lord one thousand nine hundred and thirty-seven at the County of Butler aforesaid, did unlawfully, purposely, and while attempting to perpetrate a burglary, kill Arthur Sponsel."

This count of the indictment charges the crime under the statute and was the issue of the case. On this issue, the court in its general charge, charged the jury as follows:

"You will note that the defendant, William Hobbs is charged with killing Arthur Sponsel while attempting to perpetrate a burglary. It will be necessary for you to determine whether the evidence shows beyond a reasonable doubt that he was, at the time, attempting to perpetrate a burglary. In this connection the court says to you that it is the law of this state that whoever aids, abets or procures another to commit an offense may be prosecuted and punished as if he were the principal offender. And so you will ascertain whether the defendant, William Hobbs, was at that time attempting to perpetrate a burglary or if he was aiding or abetting some other person in attempting to perpetrate a burglary. If he was aiding or abetting another person in attempting to perpetrate a burglary, he would be deemed in law to be guilty of said crime as the one actually, manually or physically engaged in attempting to commit the burglary."

Now how was the appellant prejudiced by the fact that the charge complained against omitted the words "with intent to steal", when the evidence shows the purpose beyond a peradventure of a doubt? That a case should not be reversed on a technical error, and that it must be prejudicial is provided in §13449-5 GC wherein it is stated:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of an inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him; * * * nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

See also: State v Moon, 124 Oh St, 465; State v Huffman, 131 Oh St, 27, 5 O O 325, Scott v State, 107 Oh St 475-497.

In State of Ohio v Driscoll, 106 Oh St 33, the question of the failure of counsel to call the attention of the court to any omission in the charge is dealt with particularly. In that case the court failed to charge the jury that to constitute rape they must find that the subject of the rape was a female person. The court's attention was not called to this error by counsel for the defendant. The Court of Appeals observed in that case: "There is evidence tending to prove all of the material ingredients of the crime." The Supreme Court quoted this with approval, and further stated:

"Upon this feature of the case the charge of the court was above criticism, except for the omission to instruct the jury that it must find that the prosecuting witness was a female person other than the daughter or sister of the accused and that she was not a female person under twelve years of age. Upon this point it is admitted that no request was made by counsel for the accused to supply the omission and it is also conceded that no testimony was tendered by the defendant tending to disprove the testimony of the state in relation thereto."

From this decision it may be well considered that there was a duty upon counsel in the instant case to call the attention of the court to any omission in the charge.

In State v McCoy, 88 Oh St, 447, the court at page 450 said:

"Therefore, it is now a settled rule of practice in this state that it is the duty of the trial court, both in criminal and civil cases, to separately and definitely state to the jury the issues they are to try, accompanied by such instruction as to each issue as the nature of the case may require. Measured by this rule this charge is defective in that it fails to definitely cover all the issues in the case. It is equally a settled rule of practice in this state that where the charge as given is free from prejudicial error but fails to cover all the questions involved in the case, such failure is not a ground for reversal unless it was called to the attention of the court and further instructions requested and refused, provided the jury is not misled by the charge as given."

In the Driscoll case, supra, the Supreme Court stated:

"It should be added that the error complained of is purely technical, that it could not have prejudiced the accused, and that a full instruction on that point would not have caused the jury to reach a different verdict."

In the Moon case, supra, the Supreme Court stated:

"Those provisions (§13449-5 GC), are mandatory in requiring that a judgment and conviction shall not be reversed for either of the several causes enumerated, nor 'for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial'."

The writer's view of the case is, that while special charge No. 1 was not technically correct, as an abstract proposition, in so far as it related to the case it gave the jury the law. The objection to the charge is purely technical and could not have prejudiced the accused, in view of the undisputed fact that they were attempting to break in a building to get something, or to get some money. Had the court inserted the words "with intent to steal" it would not have caused the jury to reach a different verdict. At least there is nothing in the record to indicate that such might be the case.

Finding no prejudicial error in the record, the judgment is affirmed.

ROSS, PJ, concurs
MATTHEWS, J, dissents.

## DISSENTING OPINION

By MATTHEWS, J.

I find myself unable to concur in the affirmance just announced.

The indictment charged the appellant and two others with having murdered Arthur Sponsel. There were three counts in the indictment, each charging murder in the first degree. In the first count the homicide was alleged to have been committed "unlawfully, purposely, and of deliberate and premeditated malice." In the second count it was charged that the appellant did unlawfully, purposely, and wilfully kill Arthur Sponsel, a policeman, "while the said Arthur Sponsel was in the discharge of his duties as said policeman." And in the third count it was alleged that appellant "did unlawfully, purposely, and while attempting to perpetrate a burglary, kill Arthur Sponsel."

The jury returned a verdict finding the appellant "guilty as he stands charged in the third count of the indictment, and not guilty as he stands charged in the first and second counts of the indictment."

That Arthur Sponsel was shot and killed at the time and place claimed by the state was not disputed. The appellant signed a written confession and verbally approved, with one slight detail excepted, the written confession of one of his co-defendants. These confessions were admitted in evidence and, I think properly so, notwithstanding the defendant's contention that they were involuntary. By these confessions, it appeared that the appellant and his co-defendants went out on the night in question to steal, qualified only by references to the defendant's intoxication, from which an inference might be drawn that he did not have the capacity to entertain a specific criminal intent; they were pursuing that purpose when the decedent interrupted them at the time and place charged in the indictment and bill of particulars furnished the defendant on his motion by the state. While there was no direct admission that either of the defendants fired the shot that killed Arthur Sponsel, there was the statement in the confession that the appellant fired his pistol in his direction, and that after the shots were fired Sponsel turned and ran. Sponsel's body was found in a nearby lot under such circumstances as to indicate that he had been murdered. These confessions also clearly indicate that the defendants were engaged in attempting to break and enter the building referred to in the special charge and in the bill of particulars.

In the confession, the appellant referred to the amount of alcoholic liquor which he had drunk right before, and while engaged with his co-defendant on that night, and at the trial, the only evidence introduced by him was on that subject.

At the request of the state, the court instructed the jury before argument that:

"The court instructs you that if you find from the evidence that the defendants, William Hobbs and Charles Vincent Rose, or either of them, pursuant to a conspiracy or common design, entered upon the premises occupied by Mike Vertich in the city of Hamilton, Butler county, Ohio, with intent to break and enter the building on said premises, and said defendants, or either of them, committed some overt act in attempting to break and enter said building, then the defendant, William Hobbs, would be guilty of attempting to perpetrate a burglary."

In the general charge given after argument, the court instructed the jury upon the subject of murder in attempting to perpetrate a burglary, but said nothing in further definition or qualification of the definition already given of the crime of attempting to commit a burglary.

By §12438 GC it is enacted that:

"Whoever in the night season maliciously and forcibly breaks and enters, or attempts to break and enter an uninhabited dwelling house, or a kitchen, smoke-house, shop, office, storehouse, warehouse, malthouse, stillhouse, mill, pottery, factory, water craft, schoolhouse, church or meeting house, barn or stable, railroad car, car factory, station house, hall or other building, or attempts to break and enter an inhabited dwelling house with intent to steal property of any value, or with intent to commit a felony, shall be imprisoned in the penitentiary not less than one year nor more than fifteen years."

The title of this section is "Burglary in an uninhabited dwelling and other building."

It will be observed that the definition by the court entirely omits the element of intent with which the attempt to break and enter is accompanied. The only requirements under the definition were that

there be an entrance upon the premises with intent to break and enter, and that some overt act in attempting to break and enter be committed. If these elements were present, then the court told the jury that the appellant would be guilty of attempting to perpetrate a burglary. And in the general charge the jury was told that if the appellant purposely killed while attempting to perpetrate a burglary, he was guilty of murder in the first negree.

Was this substantial error prejudicial to the appellant?

That it was error is clear. Proof of all the elements stated in the special charge would not establish an attempt to perpetrate a burglary. That is conceded by the state. But it is said that it is an error of omission, and, therefore, not reversible error in the absence of a specific exception. However at we view it, the record presents more than a mere failure to charge. The court in the special charge assumed to instruct the jury on the elements of an attempt to perpetrate the crime of burglary, and the definition given was erroneous. Now an attempt to commit a crime differs from the crime itself only in the respect that the overt act falls short of the actual commission of the crime. 12 Ohio Jur. 77. Burglary, as defined in Section 12438, General Code, requires the presence of malice and force in the breaking and entry, and in addition the intent to steal or commit a felony. An attempt must also include these mental attitudes. A definition that omits them and characterizes as burglary or an attempt to commit burglary the elements so stated is an incorrect statement of the law. It was an error of commission, properly reserved by a general exception under the statute prior to the taking effect of the present appellate code. By §11560, GC, as amended by the appellate Code, no exception of any sort is necessary to lay the foundation for review whenever the matter has been called to the attention of the court by objection, motion, or otherwise, and the court has ruled thereon, error may be predicated upon erroneous statements contained in the charge not induced by the complaining party, without exception being taken to be charged. While Section 11560, General Code, is a part of the Code of Civil procedure, we do not suppose a stricter rule would be imposed upon one seeking a review of a conviction of crime. So I conclude that the error has been properly reserved. Regardless of this, as it was an

error of commission, the general exception was sufficient.

But it is said the error was not prejudicial.

When this record is examined I am forced to the conclusion that the principal effort of the appellant was to prove that his mental condition was such that he could not entertain the intent requisite to the crime of murder in the first degree. His evidence was confined to the subject of his intoxication, which was of legal significance only in so far as it tended to prove that he cou'd not entertain the necessary intent. And he was so far successful that the trial court deemed it necessary to instruct the jury on the subject of intoxication. Now this charge defining burglary, so that no proof of intent or malice was necessary, rendered the evidence of intoxication of no avail, so far as concerned reducing the offense below first degree murder and authorized a verdict of guilty of murder in the first degree, upon proof of an intentional killing without proof of any additional animus. This, of course, was substantial error, to the prejudice of the appellant.

Reliance is placed upon State v McCoy, 88 Ohio St, 447, State v Moon, 124 Oh St 465 and State v Huffman, 131 Oh St 27, 5 O.O. 325, as justification for disregarding this manifest error in defining an attempt to commit a burg'ary. Neither case supports the conclusion. All State v McCoy decides is that a conviction will not be reversed for failure to charge on the included offenses, where no request is made and only a general exception reserved. The court had .charged correctly on the crime of which the accused was convicted.

All State v Moon decides is that a failure to instruct the jury that it must not consider the punishment is not prejudicial to the defendant.

And State v Huffman is an authority for the proposition that if the statute defining an offense includes a particular intent, that intent must be alleged and proved. It certainly is not authority to support the entire deletion of a particular intent from the statutory definition of a crime.

(2) The court instructed the jury on the subject of the included offenses of murder in the second degree and manslaughter, but limited his instruction on this subject to the first count. Counsel for appellant requested that similar instructions be given as to the second and third counts, which request was denied,

to which exception was noted, which distinguishes this case from State v McCoy, supra.

(3) Counsel also requested that appropriate forms of verdict be submitted as to the second and third counts, which also was refused, to which exception was noted.

I am of the opinion that the court erred in refusing to submit to the jury the issues of the lesser offenses, included in the crimes charged in the second and third counts. **Bandy v State, 102 Oh St 384, 131 NE 499, 21 A.L.R. 594.**

Upon a new trial, the issues presented will not be limited in any way by the result of the first trial (Section 13449-4, General Code; 12 Ohio Jur. 673; 8 R.C.L. 162 and 163; Jones v State, 144 Miss. 52, 109 So. 265, 59 A.L.R. 1146) and, therefore, if the evidence should warrant it, the instructions should cover the lesser degrees of crime included in the crime of murder in the first degree, charged in each count of the indictment.

I find no other error prejudicial to the appellant.

For these reasons, the judgment should be reversed, and the cause remanded for further proceedings in accordance with law.